## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **ROBERT HUBBLE**, *on behalf of himself and all others similarly situated*, | Civil Case No.: _____ |
| *Plaintiff*, | **COMPLAINT - CLASS ACTION** |
| v. | |
| **LOANDEPOT.COM, LLC**, | |
| *Defendant*. | |

## INTRODUCTION

1. This action arises out of the offensive marketing practices of Defendant, loanDepot.com, LLC ("Defendant" or "loanDepot") that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and the regulations promulgated thereunder.

2. loanDepot makes prerecorded telemarketing calls soliciting its financial services and products.

3. loanDepot makes these calls to individual who have previously requested not to be called and to be added to loanDepot's internal do-not-call list.

4. Accordingly, Plaintiff Robert Hubble ("Plaintiff" or "Mr. Hubble") brings this action on behalf of himself and classes of similarly situated individuals.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

6. This Court has jurisdiction over Defendant because Defendant carries on a continuous and systematic part of its general business within this District; conducts business transactions in this District; has committed tortious acts in/from this District; and/or owns, uses or

possesses real property situated within this District.

7. Venue is proper in this District because some of the wrongful conduct giving rise to this case occurred in, was directed from, and/or emanated from this District.

## PARTIES

8. Plaintiff Robert Hubble ("Mr. Hubble" or "Plaintiff") is, and at all times mentioned herein was, a citizen and resident of Lake George, Michigan.

9. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

10. Defendant is, and at all times mentioned herein was, a limited liability company organized and existing under the laws of the state of Delaware with headquarters located at 6561 Irvine Center Drive, Irvine, California 92618.

11. Defendant may be served via its registered agent, Registered Agent Solutions, Inc., located at 2285 S. Michigan Road, Eaton Rapids, Michigan 48827.

12. Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

## TCPA BACKGROUND

13. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

2

*Prohibition of Prerecorded or Artificial Voice Calls*

14. Section 227(b) of the TCPA prohibits making *any* call (other than a call made for emergency purposes) to a cellular telephone using an automatic telephone dialing system or an artificial or prerecorded voice without the prior express consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A).

15. A violation of section 227(b) carries statutory damages of $500 to $1,500 per call. *See* 47 U.S.C. § 227(b)(3)(B) and (C).

*Internal Do-Not-Call List*

16. The TCPA specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

17. The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

18. Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

19. The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

20. However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to

ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

21. These regulations are codified at 47 C.F.R. § 64.1200(d)(1)-(7).

22. Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. § 64.1200(d) (1, 2, 3, 6).

23. These policies and procedures prohibit a company from making calls for telemarketing purposes[1] unless they have implemented these policies and procedures. 47 C.F.R. § 64.1200(d).

24. Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

25. There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> [S]ection 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a

---

[1] The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

> residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013)

26. These requirements are separate but cumulative. In other words, a company must comply with both the procedures for the company specific do-not-call list *and* the procedures for complying with the national "do not call" database regulations. A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

27. Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones that are used for residential purposes. 47 C.F.R. § 64.1200(e).

## FACTUAL ALLEGATIONS

28. Mr. Hubble is the user of a cellular telephone number ending in 2316.

29. Mr. Hubble's cellular telephone number ending in 2316 is used for residential purposes.

30. In approximately early January 2024, Mr. Hubble began receiving both live and prerecorded telemarketing calls made by loanDepot soliciting him with mortgage services and loan products.

31. These calls came from ten-digit numbers, including but not limited to (989) 281-4588 and (989) 712-2035.

32. When (989) 281-4588 and (989) 712-2035 are called, a prerecorded message plays identifying loanDepot.

33. When Mr. Hubble answered loanDepot's calls, he was connected to a live representative that would solicit him with mortgage services and loan products.

5

34. On multiple occasions, Mr. Hubble explained he was not interested and did not need any mortgage services or loan products.

35. Mr. Hubble would also request that loanDepot not call him again.

36. Despite his repeated requests, loanDepot would continue calling him.

37. In an attempt to stop the calls, Mr. Hubble called into loanDepot and numerous occasions and was greeted with a message that stated "Thank you for calling loanDepot. To opt-out of further calls, press one."

38. Mr. Hubble pressed one as instructed, but the calls continued.

39. In a further effort to have the calls stop, Mr. Hubble called into loanDepot, and spoke with loanDepot representatives and directly asked that the calls stop.

40. Despite his requests, loanDepot would continue calling him.

41. When Mr. Hubble did not answer, loanDepot would leave the following artificial voice or prerecorded voice message on his phone:

> Hello. This is Savannah from loanDepot. We are sorry we missed you. But, we would love to connect. If you are no longer interested, please press pound to opt-out or call us at (866) 965-9011. We are here to help guide you, whether it is securing a mortgage, refinancing your home, or simply answering any questions you might have about the loan process. Give us a call back at (866) 965-9011. That's (866) 965-9011. Thank you.

42. On other occasions, loanDepot would leave the following artificial voice or prerecorded voice message on his phone:

> Hey there! This is Savannah calling you again from loanDepot about the home financing information you requested. If you are no longer interested in mortgage information, please press pound to opt-out or call us at (866) 965-9011. loanDepot helps thousands of people each month obtain the lowest . . . . [remainder of message cut off].

43. Defendant's voice messages were generic and similar in nature, and in some

6

circumstances, identical.

44. Given the generic nature of the messages, the content of the messages, and that messages were identical in tone, voice, content, and style, the messages Defendant delivered to Mr. Hubble's telephone number were prerecorded in nature.

45. Mr. Hubble received calls from loanDepot on at least the following dates and times soliciting him with mortgage services and products:

- March 27, 2024 at 6:10pm from (989) 712-2035;
- March 28, 2024 at 9:20am from (989) 281-4588;
- March 28, 2024 at 10:20am from (989) 281-4588;
- March 29, 2024 at 9:31am from (989) 281-4588;
- March 29, 2024 at 1:31pm from (989) 281-4588;
- March 29, 2024 at 5:32pm from (989) 281-4588;
- March 30, 2024 at 3:03pm from (989) 281-4588;
- April 1, 2024 at 11:19am from (989) 281-4588;
- April 1, 2024 at 7:20pm from (989) 281-4588;
- April 1, 2024 at 7:21pm from (989) 281-4588;
- April 2, 2024 at 2:20pm from (989) 281-4588;
- April 2, 2024 at 6:20pm from (989) 281-4588;
- April 2, 2024 at 7:50pm from (989) 712-2035;
- April 3, 2024 at 10:38am from (989) 281-4588;
- April 3, 2024 at 2:40pm from (989) 281-4588;
- April 3, 2024 at 6:40pm from (989) 281-4588;
- April 4, 2024 at 11:49am from (989) 281-4588;

- April 4, 2024 at 6:24pm from (989) 281-4588;
- April 5, 2024 at 10:56am from (989) 281-4588;
- April 5, 2024 at 6:56pm from (989) 281-4588;
- April 6, 2024 at 2:27pm from (989) 281-4588;
- April 7, 2024 at 10:51am from (989) 281-4588;
- April 8, 2024 at 1:20pm from (989) 281-4588;
- April 8, 2024 at 5:20pm from (989) 281-4588;
- April 9, 2024 at 10:51am from (989) 281-4588;
- April 9, 2024 at 2:52pm from (989) 281-4588;
- April 9, 2024 at 6:52pm from (989) 281-4588;
- April 10, 2024 at 11:49am from (989) 281-4588;
- April 10, 2024 at 3:39pm from (989) 281-4588;
- April 10, 2024 at 7:49pm from (989) 281-4588;
- April 11, 2024 at 11:52am from (989) 281-4588;
- April 11, 2024 at 3:53pm from (989) 281-4588;
- April 11, 2024 at 7:53pm from (989) 281-4588;
- April 12, 2024 at 12:12pm from (989) 281-4588;
- April 12, 2024 at 4:12pm from (989) 281-4588;
- April 12, 2024 at 8:12pm from (989) 281-4588;
- April 17, 2024 at 12:50pm from (989) 281-4588;
- April 17, 2024 at 4:51pm from (989) 281-4588;
- April 18, 2024 at 1:11pm from (989) 281-4588;

- April 18, 2024 at 5:11pm from (989) 281-4588;
- April 19, 2024 at 2:07pm from (989) 281-4588;
- April 19, 2024 at 6:08pm from (989) 281-4588;
- April 22, 2024 at 2:41pm from (989) 281-4588;
- April 22, 2024 at 6:41pm from (989) 281-4588;
- April 23, 2024 at 1:25pm from (989) 281-4588;
- April 23, 2024 at 5:25 pm from (989) 281-4588;
- April 23, 2024 at 9:25 pm from (989) 281-4588;
- April 24, 2024 at 2:03 pm from (989) 281-4588;

46. All of these calls occurred after Mr. Hubble instructed loanDepot not to call him again.

47. Mr. Hubble did not provide his consent to receive these calls from loanDepot.

48. Mr. Hubble requested that loanDepot cease calling him.

49. loanDepot or those otherwise calling on loanDepot's behalf, did not have written do-not-call policies or procedures at the time of the calls to Mr. Hubble and the classes defined below. Alternatively, whatever written policies existed either failed to comply with the minimum requirements under the TCPA, 47 C.F.R. § 64.1200(d), or were never properly implemented—including as evidenced by the continued calls to Mr. Hubble after he directly asked not to be contacted and followed loanDepot's instructions to have the calls stop.

50. Defendant's violations were negligent.

51. Alternatively, Defendant's violations were willful and knowing.

52. Mr. Hubble and the classes were damaged by the violations alleged herein. Their privacy was improperly invaded, Defendant's calls temporarily seized and trespassed upon the use

9

of their phones, and they were forced to divert attention away from other activities to address the unwanted calls. The calls were annoying and a nuisance, and wasted the time of Mr. Hubble and the class members. *See, e.g., Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

## DEFENDANT'S LIABILITY

53. Defendant uses automated systems to make telephone calls, to hundreds if not thousands of consumers across the U.S., including to consumers who requested not to be called.

54. Certain of these calls utilized an artificial or prerecorded voice in violation of 47 U.S.C. § 227(b).

55. For violations of 47 U.S.C. § 227(b), Mr. Hubble is entitled to a minimum of $500 per call. *See* 47 U.S.C. § 227(b)(3)(B).

56. Mr. Hubble is entitled to $1,500 per call if loanDepot's actions are found to be knowing or willful. See 47 U.S.C. § 227(b)(3)(C).

57. In addition, loanDepot made two or more telemarketing calls to Mr. Hubble despite not having in place the required policies and procedures prior to making such calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.6200(d).

58. Accordingly, for violations of 47 C.F.R. § 64.1200(d), Mr. Hubble is entitled to an additional $500 per call through 47 U.S.C. § 227(c).

59. Mr. Hubble is entitled to an additional $1,500 per call if Defendant's actions are found to be knowing or willful.

## CLASS ACTION ALLEGATIONS

60. Mr. Hubble brings this action under Fed. R. Civ. P. 23 on behalf of two "Classes," defined as follows:

## THE TCPA CLASSES

Plaintiff and all persons within the United States who from four years prior to the filing of this action through class certification Defendant called using an artificial or prerecorded voice message for the same purpose Plaintiff was called.

("Prerecorded Class")

All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant called (2) using an artificial or pre-recorded voice (3) despite previously requesting to no longer be contacted.

("Pre-Recorded Stop Class")

(The Prerecorded Class, the Registry Class, the Pre-Recorded Stop Class, are collectively referred to herein as the "Classes.")

61. Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

62. The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

63. The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant and/or third parties maintain written and electronically stored data showing:

  a. The time period(s) during which Defendant made its calls;

  b. The telephone numbers to which Defendant called;

11

      c.      The telephone numbers for which Defendant had prior express written consent;

      d.      The purposes of such calls; and

      e.      The names and addresses of Class members.

64.     The Classes are comprised of hundreds, if not thousands, of individuals.

65.     There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

      a.      Whether Defendant makes telemarketing calls;

      b.      Whether Defendant obtains prior express written consent;

      c.      Whether Defendant had the required policies and procedures prior to making telemarketing calls;

      d.      Whether Defendant's statutory violations were willful and knowing; and

      e.      Whether Defendant should be enjoined from engaging in such conduct in the future.

66.     Plaintiff is a member of the Classes in that Defendant made two or more prerecorded calls for telemarketing purposes, in a one-year period to his telephone number, without his prior express written consent, after he asked Defendant to stop.

67.     Plaintiff's claims are typical of the claims of the Members of the Classes in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

68.     Plaintiff and all putative Members of the Classes have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Defendant's unwanted calls and suffered a nuisance and an invasion of their privacy.

69. Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

70. Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent him and the Classes.

71. Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

72. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

73. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

74. Common questions will predominate, and there will be no unusual manageability issues.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. §227(b)**
**(On behalf of Plaintiff and the Prerecorded Class)**

75. Mr. Hubble and the proposed Classes incorporate the foregoing allegations as if fully set forth herein.

76. Defendant placed, or had placed on its behalf, prerecorded telephone calls to Mr. Hubble's and Class Members' telephone numbers without prior express consent.

77. The calls were not placed for "emergency purposes" as defined by 47 U.S.C. § 227(b).

78. Defendant has therefore violated 47 U.S.C. § 227(b).

13

79. As a result of Defendant's unlawful conduct, Mr. Hubble and the Class Members are entitled to an award of $500 in statutory damages for each call, pursuant to 47 U.S.C. § 227(b)(3)(B).

80. Mr. Hubble and the Class Members are entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 277(b)(3).

## SECOND CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(b)
### (On behalf of Plaintiff and the Pre-Recorded Stop Class)

81. Mr. Hubble and the proposed Classes incorporate the foregoing allegations as if fully set forth herein.

82. Defendant made numerous calls for telemarketing purposes to Plaintiff's and putative Pre-Recorded Stop Class Members' telephone numbers.

83. Defendant did so despite not recording or honoring "do not call" requests.

84. Plaintiff and putative Pre-Recorded Stop Class Members are entitled to an award of $500 in statutory damages per telephone call.

85. Plaintiff and putative Pre-Recorded Stop Class Members are entitled to an award of treble damages in an amount up to $1,500 per telephone call.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. An order certifying the Classes as defined above, appointing Plaintiff as the representatives of the Classes and appointing his counsel as Class Counsel;

B. An order declaring that Defendant's actions, as set out above, violate the statutes

referenced herein;

C. An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D. An award of statutory damages;

E. An award of treble damages;

F. An award of reasonable attorneys' fees and costs;

G. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: May 2, 2024     Respectfully submitted,

*/s/ Anthony I. Paronich,*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043.
[o] (617) 485-0018
[f] (508) 318-8100
anthony@paronichlaw.com

Max S. Morgan, Esquire
THE WEITZ FIRM, LLC
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com