UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **ROBERT HUBBLE**, *on behalf of himself and all others similarly situated*, <br><br> *Plaintiff*, <br><br> v. <br><br> **LOANDEPOT.COM, LLC**, <br><br> *Defendant*. | Civil Case No.: 1:24-cv-11173 <br><br> Hon. Thomas L. Ludington |

**PLAINTIFF ROBERT HUBBLE'S
MOTION FOR A PROTECTIVE ORDER**

Plaintiff Robert Hubble ("Plaintiff" or "Mr. Hubble") respectfully moves this Court for a Protective Order related to a subpoena served on Verizon Wireless by Defendant, loanDepot.com, LLC ("Defendant" or "loanDepot").

In support of this Motion, Plaintiff respectfully refers the Court to the Brief in Support filed herewith.

Pursuant to E.D. Mich LR 7.1, Plaintiff and Defendant held a conference and discussed the nature of the relief sought, the grounds for the motion, whether Defendant would concur and whether the parties could narrow the issues. The Parties were unable to resolve the issues set forth in the Motion.

WHEREFORE, Plaintiff respectfully requests that the Court issue a Protective Order related to the Verizon Wireless subpoena issued by Defendant.

PLAINTIFF,
By his attorney

*s/ Max S. Morgan*
Max S. Morgan, Esquire
(PA Bar ID: 316096)
THE WEITZ FIRM, LLC
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com

Anthony I. Paronich
(Mass. Bar ID: 678437)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

George T. Blackmore (P76942)
BLACKMORE LAW PLC
1100 Owendale Drive, Suite M
Troy, MI 48083
T: (833) 343-6743
F: (855) 744-4419
E: george@blackmore.law

*Attorneys for Plaintiff and the Putative Class*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **ROBERT HUBBLE**, *on behalf of himself and all others similarly situated*,<br><br>            *Plaintiff*,<br><br>    v.<br><br>**LOANDEPOT.COM, LLC**,<br><br>            *Defendant*. | Civil Case No.: 1:24-cv-11173<br><br>Hon. Thomas L. Ludington |

**PLAINTIFF ROBERT HUBBLE'S BRIEF IN SUPPORT OF HIS MOTION FOR A PROTECTIVE ORDER**

Plaintiff, Robert Hubble ("Plaintiff" or "Mr. Hubble"), respectfully submits this Brief in Support of His Motion for a Protective Order, and states as follows:

**I.     CONCISE STATEMENT OF THE ISSUES PRESENTED**

1. Whether the Court should enter an order pursuant to Federal Rule of Civil Procedure 26(c) protecting Mr. Hubble's complete call detail records in the possession of Verizon;

2. Whether the Court should quash the subpoena to produce documents issued by Defendant loanDepot.com, LLC ("Defendant" or "loanDepot") to Verizon, or in the alternative, modify and limit the subpoena to telephone records for the period of time Defendant placed its calls to Mr. Hubble and to the specific numbers Defendant used to call Mr. Hubble.

1

## II. CONTROLLING AND MOST APPROPRIATE AUTHORITY

Federal Rule of Civil Procedure 26 sets forth the appropriate scope of discovery. *See* Fed. R. Civ. P. 26(b)(1). Federal Rule of Civil Procedure 45(d) allows a Court to quash or modify a subpoena. *See* Fed. R. Civ. P. 45. The decision in *Mey v. Interstate Nat'l Dealer Servs.,* No. 14-cv-01846-ELR, 2015 U.S. Dist. LEXIS 182499 (N.D. Ga. June 23, 2015) is persuasive authority, in which the Court quashed an overbroad subpoena for a Plaintiff's telephone records in a TCPA class action.

## III. INTRODUCTION

Defendant issued an overbroad subpoena to Verizon Wireless, Mr. Hubble's telephone carrier, to obtain 10 months of his complete cellular telephone records. These records will show each and every call Mr. Hubble made or received over a 10-month period – whether or not they have anything to do with Defendant or this case. Worse, Defendant issued this subpoena *after* Mr. Hubble provided Defendant with redacted copies of these same records, that he subpoenaed from Verizon, showing the calls to and from Defendant. Mr. Hubble also offered to search the phone records he obtained for any additional telephone numbers Defendant believed were relevant (*e.g.*, other numbers Defendant used to call Plaintiff from) and unredact such call records with respect to those numbers. Defendant did not accept such a compromise and instead chose to issue an overbroad subpoena to Verizon.

2

Mr .Hubble believes Defendant's subpoena is nothing more than an attempt to harass him with a fishing expedition, further violate his privacy rights and deter him from maintaining this lawsuit.

For the reasons set forth below, the Court should issue a protective order and quash the subpoena.

## IV. BACKGROUND

This is a class action brought pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227. Mr. Hubble, a disabled veteran, alleges that in early 2024, he began receiving both live and prerecorded calls made by Defendant soliciting him with its products and services. [*See* Dkt. 1 at ¶¶ 30-33]. Mr. Hubble identified two telephone numbers, (989) 281-4588 and (989) 712-2035, that the calls from Defendant originated from. [*See id.* at ¶ 31]. Mr. Hubble advised Defendant that he was not interested in such products and services and requested that the calls stop, but Defendant continued to bombard Mr. Hubble with unwanted calls. [*See id.* at ¶¶ 34-46].

On September 23, 2024, Mr. Hubble issued a subpoena to Verizon Wireless seeking, *inter alia*, his call detail records for the period of November 1, 2023 through June 1, 2024. *See* Exhibit A. Verizon responded to the subpoena on or about October 11, 2024 and produced call detail records related to Mr. Hubble's telephone number. The Verizon records showed that from March 27, 2024 to May 2, 2024,

3

Defendant called Mr. Hubble 64 separate times from telephone numbers (989) 281-4588 and (989) 712-2035.  The Verizon records also showed Mr. Hubble's calls to these numbers, in an attempt to have the calls stopped.

On October 17, 2024, Mr. Hubble produced the Verizon records to Defendant. Prior to production, Mr. Hubble redacted non-relevant calls, *i.e.,* calls placed to and from telephone numbers other than the numbers associated with Defendant.  *See* Exhibit B.[1]  Mr. Hubble invited Defendant to provide any other telephone numbers that Defendant believed were relevant to the case (*e.g.*, other numbers that Defendant called Mr. Hubble from).  Mr. Hubble agreed to unredact such calling records and reproduce the calling records showing such additional relevant calls, if any. Defendant did not respond to this offer.

On October 22, 2024, Defendant provided notice of its intent to issue a subpoena to Verizon for "all call log records that include a date and time, as well as call recipients for the account associated with [Plaintiff's telephone number]."  *See* Exhibit C.  Defendant seeks records from the time period from October 1, 2023 through August 1, 2024.  *See id.*

---

[1] Plaintiff provided records to Defendant that included Plaintiff's complete telephone number.  Plaintiff further redacted this document to remove the first six digits of Plaintiff's telephone number when filing this exhibit with the Court to protect Plaintiff's privacy.

On October 24, 2024, the parties held a meet and confer regarding this subpoena. Plaintiff raised various privacy concerns regarding his inbound and outbound communications with third parties that are wholly irrelevant to the case. Plaintiff also raised concerns about the length of the period Defendant requests records as it extends beyond the time-period Defendant placed calls to Plaintiff and extends after Plaintiff filed the action. Plaintiff explained that Defendant has records, in its possession (which it has not yet produced)[2], showing when it called and received calls from Plaintiff. Defendant's only stated reason for issuing the subpoena was that it is entitled to know who Plaintiff talks to, when and for how long. But, Defendant couldn't articulate *exactly* how it intended to identify who the telephone numbers were associated with, other than by calling them, "searching" them on the internet, or asking Plaintiff to identify all of the numbers and calls at a deposition. This would subject Plaintiff and countless third parties to harassment by Defendant.

Plaintiff and Defendant continued to meet and confer on the subpoena and Defendant advised Verizon to hold its production while the parties continued this process. During these subsequent meet-and-confer discussions, Defendant advised

---

[2] Plaintiff issued discovery requests on August 21, 2024. Defendant has not produced a single document since then, despite numerous requests by Plaintiff. Plaintiff anticipates filing a motion to compel shortly to compel Defendant to produce documents and comply with its discovery obligations.

5

that it was most concerned with whether Plaintiff was communicating with other mortgage companies at the time Defendant was calling Plaintiff. While Plaintiff does not think this is relevant to whether or not Defendant had consent to call him, Plaintiff offered to provide Defendant with a list of all commercial telephone numbers (e.g., 800, 877, 866 numbers) that appeared on his telephone records. Defendant rejected this proposal and instead offered to limit the subpoena to the time period it was calling Plaintiff. For the reasons stated above, Plaintiff does not believe Defendant's proposal addresses Plaintiff's concerns. Accordingly, the parties are now at an impasse.

At bottom, Plaintiff believes this subpoena is nothing but a fishing expedition or worse an attempt to harass Plaintiff and deter him from maintaining this lawsuit against Defendant. A protective order should be issued.

## V.  ARGUMENT

The claims brought in this putative class action involve sixty-four calls to Mr. Hubble over a period of just 36 days. Yet, Defendant's subpoena to Verizon seeks **<u>10 months</u>** of Mr. Hubble's calling history. This information will show every inbound and outbound call Mr. Hubble placed for 10 months, whether relevant to this action or not. Telephone calls that do not involve Defendant are *irrelevant* to this case and Defendant cannot articulate any legitimate reason why Defendant

needs to know about each and every personal telephone call Plaintiff has made for 10 months.

Mr. Hubble has a legitimate personal interest in the privacy of the calls he made and received. Additionally, numerous third parties who communicated with Mr. Hubble via telephone have interests in maintaining the privacy of their own communications. Mr. Hubble respectfully requests that his Motion be granted and that a Protective Order issue that will quash the subpoena. *See Mey v. Interstate Nat'l Dealer Servs.*, No. 14-cv-01846, 2015 U.S. Dist. LEXIS 182499 (N.D. Ga., Jun. 23, 2015) (granting motion to quash overbroad subpoena for plaintiff's phone records having nothing to do with the case). Defendant already has Mr. Hubble's Verizon Wireless records showing the calls that are *actually* relevant to the allegations in this matter and Mr. Hubble stands ready to provide Defendant with updated records showing calls to or from any other relevant loanDepot numbers provided by Defendant. Mr. Hubble has also offered to provide the "commercial" telephone numbers that appear on his records.

### A. A Protective Order is Warranted to Prohibit Discovery of Irrelevant and Private Information About Mr. Hubble

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, a party may obtain discovery regarding any non-privileged matter that:

> is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the

7

>parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). While it is not an unlimited license for fishing expeditions, this rule is to be broadly construed with a bias in favor of open discovery. *See Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978). However, all discovery is subject to the limitations of Rule 26(b)(2)(C), which states that the court must limit the extent of discovery if it determines that:

>(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
>(ii) the party seeking discovery has had ample opportunity to obtain the information; or
>
>(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

Defendant already has the relevant Verizon records in its possession. Plaintiff produced them *before* Defendant issued its subpoena to Verizon. Defendant issued the subpoena for no other reason than to seek irrelevant information and to harass Plaintiff. Defendant's subpoena to Verizon *should have been* tailored to the claims and defenses in this case. It was not. There is simply no good reason to allow Defendant to comb through 10 months of Mr. Hubble's calling history at the cost of infringing on his and hundreds of other individuals' right to privacy. Defendant

8

cannot articulate *how* Mr. Hubble's calling history (outside of the specific calls to and from Defendant) would resolve any issue in this case. Indeed, Defendant does not even allege that Mr. Hubble first called Defendant to inquire about its products or services as a consent defense, making the issuance of this subpoena more dubious.

On its face, the Verizon subpoena seeks irrelevant information that pertains to personal and confidential calling history. Documents responsive to these requests will contain nearly all calls made to or by third parties that have nothing to do with this matter. Documents responsive to these requests could also include Mr. Hubble's communications with his attorneys. This is not something Defendant can dispute.

Further, the subpoena seeks documents for an irrelevant time period as they request records that are not limited to the date range of the calls that form the basis for Mr. Hubble's claims. Why does Defendant need calling records for multiple months *after* Defendant stopped calling Plaintiff and *after* Plaintiff filed this lawsuit? There is no valid reason for Defendant's pursuit of this information. At best, Defendant intends on conducting an invasive fishing expedition in hopes it may find some activity that it can mold into a defense for its illegal conduct. At worst, Defendant intends to harass Mr. Hubble and dissuade him from pursuing this matter by calling every number that appears on his telephone records and demand that party identify himself or herself or ask Mr. Hubble about each number and call that

9

appears. The Court should issue a protective order to prevent such abuses and harassment.

### B. Defendant's Right to Access Personal, Confidential Information is Outweighed by Mr. Hubble's and Numerous Third Parties' Privacy Rights

Congress has long recognized that individuals have a privacy interest in telephone records, making it a criminal offense to obtain telephone records without the knowledge or consent of the consumer through any fraudulent means. As Congress' findings to the Telephone Records and Privacy Protection Act of 2006 states:

> Sec. 2 FINDINGS.
> Congress finds that –
>
> (1) telephone records can be of great use to criminals because the information in call logs may contain a wealth of personal data;
>
> (2) call logs may reveal the names of telephone users' doctors, public and private relationships, business associates and more;
>
> (3) call logs are typically maintained for the exclusive use of phone companies, their authorized agents, and authorized consumers

PL 109–476, January 12, 2007, 120 Stat 3568. Also, The Telecommunications Act, 47 U.S.C. § 222, includes a general duty for telecommunications carriers to protect from disclosure of a customer's proprietary network information ("CPNI"). Section 222 defines CPNI a follows:

> (A) information that relates to the quantity, technical configuration, type, destination, location, and amount of

10

use of a telecommunications service subscribed to by any customer of a telecommunications carrier, and that is made available to the carrier by the customer solely by virtue of the carrier-customer relationship; and

(B) information contained in the bills pertaining to telephone exchange service or telephone toll service received by a customer of a carrier.

47 U.S.C. § 222(h)(1). As the title of § 222 ("privacy of customer information") and the above quoted language suggest, this provision was principally intended to protect consumer's privacy interests. *U.S. West, Inc. v. FCC,* 182 F.3d 1224, 1236 (10th Cir.1999) ("[T]he specific and dominant purpose of § 222 is the protection of customer privacy."); Federal Communications Comm'n, Second Report and Order and Further Notice of Proposed Rulemaking in the *Matter of Implementation of the Telecommunications Act of 1996,* 13 F.C.C.R. 8061 ¶ 1 (1998) ("Congress recognized, however, that the new competitive market forces and technology ushered in by the 1996 Act had the potential to threaten consumer privacy interests. Congress, therefore, enacted section 222 to prevent consumer privacy protections from being inadvertently swept away along with the prior limits on competition.").

Moreover, the Supreme Court has long "recognized that '[p]reserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits, is surely an important value.'" *Frisby v. Schultz,* 487 U.S. 474, 484, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988) (quoting *Carey*

11

*v. Brown,* 447 U.S. 455, 471, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980)). Mr, Hubble's recognized privacy rights are infringed by the subpoena to Verizon. Defendant seeks to discover every telephone call that Mr. Hubble made or received for 10 months. *See* Exhibit "C". Defendant's request infringes upon the privacy rights of hundreds of persons who may have communicated with Mr. Hubble. Weighing the substantial privacy rights of numerous non-parties against the relevance and need of the material sought – a protective order should be issued.

## VI. <u>CONCLUSION</u>

Defendant cannot establish a minimum threshold of relevance for its invasive subpoena to Verizon seeking 10 months of irrelevant records, let alone overcome the substantial privacy interests of Mr. Hubble and numerous third parties. Rather than place a significant burden on Mr. Hubble and third parties, Defendant should accept the records it has already been given showing the calls it made to, and received from Mr. Hubble – the ones that *actually* are relevant to the claims and defenses

Mr. Hubble respectfully requests the Court: (1) grant the instant Motion; (2) enter an order pursuant to Federal Rules of Civil Procedure 26(c) protecting Mr. Hubble's private information in the possession of Verizon; (3) quash the subpoena to produce documents issued by Defendant to Verizon, or in the alternative, modify and limit the subpoena to documents generated for the specific dates at issue and the

numbers Defendant called Mr. Hubble on; and (4) grant such other and further relief as this Court deems necessary and proper.

        PLAINTIFF,
        By his attorney

        *s/ Max S. Morgan*
        Max S. Morgan, Esquire
        (PA Bar ID 316096)
        THE WEITZ FIRM, LLC
        1515 Market Street, #1100
        Philadelphia, PA 19102
        Tel: (267) 587-6240
        Fax: (215) 689-0875
        max.morgan@theweitzfirm.com

        Anthony I. Paronich
        (Mass Bar ID 678437)
        Paronich Law, P.C.
        350 Lincoln Street, Suite 2400
        Hingham, MA 02043
        (508) 221-1510
        anthony@paronichlaw.com

        George T. Blackmore (P76942)
        BLACKMORE LAW PLC
        1100 Owendale Drive, Suite M
        Troy, MI 48083
        T: (833) 343-6743
        F: (855) 744-4419
        E: george@blackmore.law

        *Attorneys for Plaintiff and the Putative Class*

## **CERTIFICATE OF SERVICE**

The foregoing document has been filed electronically, is available for viewing and downloading from the ECF system, and has been served on all parties of record via electronic service through the ECF system on October 31, 2024.

*/s/ Max S. Morgan*
Max S. Morgan
