# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

**ROBERT HUBBLE**, *on behalf of himself and all others similarly situated*,

*Plaintiff,*

v.

**LOANDEPOT.COM, LLC**,

*Defendant.*

Civil Case No.: 1:24-cv-11173

Hon. Thomas L. Ludington

## PLAINTIFF ROBERT HUBBLE'S
## MOTION TO COMPEL A DOCUMENT PRODUCTION

Plaintiff Robert Hubble ("Plaintiff" or "Mr. Hubble") respectfully moves this honorable Court for an Order compelling Defendant, loanDepot.com, LLC ("Defendant" or "loanDepot") to produce documents.

In support of this Motion, Plaintiff respectfully refers the Court to the Brief in Support filed herewith.

Pursuant to E.D. Mich LR 7.1, Plaintiff and Defendant held a conference and discussed the nature of the relief sought, the grounds for the motion, whether Defendant would concur and whether the parties could narrow the issues. The Parties were unable to resolve the issues set forth in the Motion.

WHEREFORE, Plaintiff respectfully requests that the Court issue an Order compelling the Defendant to produce the documents sought.

PLAINTIFF,
By his attorney

*s/ Anthony Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Max S. Morgan, Esquire
THE WEITZ FIRM, LLC
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com

George T. Blackmore (P76942)
BLACKMORE LAW PLC
1100 Owendale Drive, Suite M
Troy, MI 48083
T: (833) 343-6743
F: (855) 744-4419
E: george@blackmore.law

*Attorneys for Plaintiff and the Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

The foregoing document has been filed electronically, is available for viewing and downloading from the ECF system, and has been served on all parties of record via electronic service through the ECF system on November 4, 2024.

*/s/ Anthony Paronich*
Anthony Paronich

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **ROBERT HUBBLE**, *on behalf of himself and all others similarly situated*,<br><br>     *Plaintiff*,<br><br> v.<br><br>**LOANDEPOT.COM, LLC**,<br><br>     *Defendant*. | Civil Case No.: 1:24-cv-11173<br><br>Hon. Thomas L. Ludington |

## PLAINTIFF ROBERT HUBBLE'S BRIEF IN SUPPORT OF HIS MOTION TO COMPEL A DOCUMENT PRODUCTION

Plaintiff, Robert Hubble ("Plaintiff" or "Mr. Hubble"), respectfully submits this Brief in Support of His Motion to Compel a Document Production, and respectfully states as follows:

## I. CONCISE STATEMENTS OF THE ISSUES PRESENTED

1. Whether the Defendant must begin (and complete) its document production.

2. Should the Defendant disclose its employees and vendors involved in contacting the Plaintiff with pre-recorded messages?

3. Should the Defendant produce records of putative class members it contacted with a pre-recorded message and any evidence it had of consent to make such calls?

4.  Should the Defendant be compelled to produce evidence it has of other complaints of outbound telemarketing conduct similar to what is at issue here?

## II.   CONTROLLING AND MOST APPROPRIATE AUTHORITY

1.  Fed. R. Civ. P. 34(b)(2)(B) mandates that a response should occur with the written response or within "another reasonable time specified in the response."

2.  The proportionality requirement was born out of Rule 26's amendment in 2015, but "the basic tenet that Rule 26 is to be liberally construed to permit broad discovery remains unaltered." *United States v. Quicken Loans Inc.*, No. 16-CV-14050, 2017 U.S. Dist. LEXIS 80996, 2017 WL 2306444, at *1 (E.D. Mich. May 26, 2017).

3.  Similar records of calls were compelled in *Mey v. Frontier Commc'ns Corp.*, No. 13-cv-01191-MPS, ECF No. 102 (D. Conn. Dec. 5, 2014).  Here, like *Mey*, the Plaintiff's expert will determine which calls qualify for membership in the class in order to prepare this case for class certification. Because the sought-after Call Records are plainly relevant to contested elements of Rule 23, including numerosity, this Court should compel their production. Relatedly, loanDepot should produce records of consent to make such calls that

it has put at issue. *See Martin v. Bureau of Collection Recovery*, No. 10 C 7725, 2011 WL 2311869, at *1 (N.D. Ill. June 13, 2011) ("If defendant cannot substantiate this defense with documents or information responsive to the interrogatory, it should say so under verification and withdraw that defense.")

4. There is also no meaningful dispute that this information may possibly be introduced at trial. In fact, the Fourth Circuit Court of Appeals affirmed a jury verdict holding a defendant vicariously liable and subject to willful damages under the TCPA following a 5-day trial. *See Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643 (4th Cir. 2019) *certiorari* denied *Dish Network v. Kr.*, 2019 U.S. LEXIS 7573 (U.S., Dec. 16, 2019). In that lawsuit, the defendant's history of receiving prior complaints, their responses to those complaints and settlements of such lawsuits were all issues considered by the jury. *See Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643, 662 (4th Cir. 2019).

## III.   INTRODUCTION

Defendant loanDepot.com ("Defendant" or "loanDepot") has not produced a single document so far in this case. This is in spite of the fact that the Plaintiff issued the discovery early this summer, initiated a meet and confer in August of 2024 and was willing to compromise on some of his positions. loanDepot has simply chosen to ignore its discovery obligations and delay this case. The information sought is clearly relevant and includes records of individuals loanDepot called with live agents and/or pre-recorded messages and any corresponding records of consent to make such calls that loanDepot may rely upon to support its asserted affirmative defenses.

For the reasons set forth below, the Court should compel the production sought.

## IV.   BACKGROUND

This is a class action brought pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227.  Section 227(b) of the TCPA prohibits making **any** call (other than a call made for emergency purposes) to a cellular telephone using an automatic telephone dialing system or an artificial or prerecorded voice without the prior express consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A). A violation of section 227(b) carries statutory damages of $500 to $1,500 per call. *See* 47 U.S.C. § 227(b)(3)(B) and (C). The TCPA specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone

subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order"). Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. § 64.1200(d) (1, 2, 3, 6).

Mr. Hubble, a disabled verteran, alleges that in early 2024, he began receiving both live and prerecorded calls made by Defendant loanDepot.com, LLC ("Defendant" or "LoanDepot") soliciting its products and services. [*See* Dkt. 1 at ¶¶ 30-33]. Mr. Hubble identified two telephone numbers, (989) 281-4588 and (989) 712-2035, that the calls originated from. [*See id.* at ¶ 31]. Mr. Hubble advised Defendant that he was not interested in such products and services and requested that the calls stop, but Defendant continued to bombard Mr. Hubble with unwanted calls anyway. [*See id.* at ¶¶ 34-46].

Due to the *en masse* nature of the automated calling, Plaintiff has sought to represent the following two classes:

Plaintiff and all persons within the United States who from four years prior to the filing of this action through class certification Defendant called using an artificial or prerecorded voice message for the same purpose Plaintiff was called.

("Prerecorded Class")

All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant called (2) using an artificial or pre-recorded voice (3) despite previously requesting to no longer be contacted.

("Pre-Recorded Stop Class")

[*See id.* at ¶ 61].

On July 22, 2024, Plaintiff served written discovery requests on the Defendant.  Defendant provided its written responses on August 22, 2024, but did not produce a single document. In response to certain discovery requests, Defendant stated that it would produce documents, but did not state when Defendant would produce them.  Defendant's discovery responses are attached as Exhibit 1 and 2.

On August 22, 2024 the Plaintiff sought a meet and confer regarding the deficiencies in the responses. The parties conducted a meet and confer on September 23, 2024. The Plaintiff then followed up multiple times with the Defendant via email over the next month, but did not receive any further response related to the issues discussed at the meet and confer.  Accordingly, the parties are at an impasse, as Defendant has ignored Plaintiff's most recent attempts to confer related to the document production and discovery issues. *See* Exhibit 3.

## V.     STANDARD

"Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).  The Federal Rules of Civil Procedure broadened the scope of discovery to include "any nonprivileged matter that is relevant to any party's claim or defense…. Information within this scope need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

If a party fails to respond to discovery, including if that party's discovery response is evasive or incomplete, the requesting party may move for an order compelling discovery. Fed. R. Civ. P. 37(a)(1)-(4). The Court "may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1).

## VI.    ARGUMENT

### 1.  The Defendant Must Begin (and Complete) its Production.

There is no dispute that the Plaintiff has sought what loanDepot must concede is some relevant information with these requests. As such, the Plaintiff is simply attempting to secure the documents that the Defendant will produce. Responses to interrogatories and requests for production are due within 30 days after service. *See* Fed. R. Civ. P. 33(b)(2); Fed. R. Civ. P. 34(a)(2). When a party fails to make disclosures within 30 days, or fails to cooperate in discovery,

the party seeking discovery "may move for an order compelling an answer." Fed.

R. Civ. P. 37(a)(3)(B); *see also Hartford Accident & Indem. Co., Prop. & Cas. Ins.*

*of Hartford v. Greater Lakes Ambulatory Surgery Ctr., LLC*, Case No. 18-13579,

2023 U.S. Dist. LEXIS 234814, *5 (E.D. Mi. Dec. 6, 2023). Here, the Plaintiff is,

in the first instance, attempting to obtain documents that loanDepot concedes are

relevant and that it stated it would produce.  loanDepot cannot state it will produce

documents then never produce them and ignore numerous follow-up requests

asking when documents will be produced.  This is a clear violation of Federal Rule

of Civil Procedure 34, which requires loanDepot to either produce the documents

with its response or within "another reasonable time specified in the response."

Fed. R. Civ. P. 34(b)(2)(B).

> ## 2.  The Plaintiff is Seeking Information Related to who was Involved in Contacting the Plaintiff.

The Plaintiff is also seeking to compel a complete response to the following

interrogatories:

**INTERROGATORY NO 2:** Identify all employees or vendors involved in making outbound calls as part of your contact to the Plaintiff. This includes, but is not limited to, (a) third parties that you contract with who make telemarketing calls to generate leads (b) the dialing system platform or provider used to make calls (c) where the phone numbers to make the calls is obtained.

**INTERROGATORY NO 3:** Identify and describe the work of each employee or vendor identified in response to Interrogatory No. 2.

In response to this question that is explicitly limited to the Plaintiff's interactions with loanDepot, the Defendant provided 3 pages of objections and refused to answer. A complete response should be compelled.

Fed. R. Civ. P. 26(b)(1) controls the scope of discovery and provides, in relevant part:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

This "proportionality" requirement was born out of Rule 26's amendment in 2015, but "the basic tenet that Rule 26 is to be liberally construed to permit broad discovery remains unaltered." *United States v. Quicken Loans Inc.*, No. 16-CV-14050, 2017 U.S. Dist. LEXIS 80996, 2017 WL 2306444, at *1 (E.D. Mich. May 26, 2017) (internal citations omitted). Here, the Plaintiff is only seeking

information about who was involved in contacting the Plaintiff and what they did.
By its nature, this information is going to be relevant to this action. For example,
where did the Defendant obtain the Plaintiff's number? What platform was used to
contact him? Who contacted him on behalf of loanDepot. Such information is
straightforward and should be provided.

The Defendant's 3 pages of objections should be overruled. First,
loanDepot's reliance on speculation about what might have happened to the
Plaintiff but did not (like "if a former loanDepot director made calls to the Plaintiff
that wasn't authorized by loanDepot"), is not an appropriate objection with
specificity. Second, if the employee or vendor was involved in contacting the
Plaintiff, whose only interactions with loanDepot related to unwanted
telemarketing calls, then they would have relevant information to this case.  This
basic information is clearly relevant and should be provided.

### 3. The Plaintiff Seeks Records of other Pre-Recorded Calls and Calls Sent after a "STOP" request is Relevant Because it is Necessary to Identify Putative Class Members

The Plaintiff is moving to compel the following request:

**DOCUMENT REQUEST NO 15:** Please produce all documents containing any of the following information for each outbound telemarketing call sent by you or your vendors on any lead generation or customer acquisition campaigns, including, but not limited, to the campaign that contacted the Plaintiff. This includes, but is not limited to, the following information:

- the date and time;
- the caller ID;
- any recorded message used;
- the result;
- identifying information for the recipient; and
- any other information stored by the call detail records.

These documents are referred to as "Call Records". The Call Records Plaintiff seeks are highly relevant to the numerosity, commonality, typicality, and predominance elements of Rule 23 and the calculation of class-wide damages.

As an initial matter, where a defendant contests elements of Rule 23 in proposed class actions under the TCPA, courts routinely require the production of information necessary to support those requirements. *See, e.g.*, *Cahill v. GC Servs. Ltd. P'ship*, No. 3:17-cv-01308-GPCMDD, 2018 WL 1791910, at *4 (S.D. Cal. Apr. 16, 2018) ("RFPs 10-13 and 18 are relevant at least to the issues of numerosity and commonality. The lists are reasonably calculated to identify the number of recipients of calls made during the class period, which is crucial to determine whether the class is so numerous to make joinder impracticable. The call lists are also relevant to the

commonality requirement under Rule 23(a), for which plaintiff must show the class

'suffered the same injury ... such that the ... class claims will share common

questions of law or fact" with those of the named plaintiffs.'" (internal citations

omitted); *Mbazomo v. ETourandTravel, Inc.*, No. 2:16-CV-02229-SB, 2017 WL

2346981, at *5 (E.D. Cal. May 30, 2017) (compelling the production of call data

because "the Court agrees with the weight of authority on this matter that call logs

and dialing lists are relevant to the commonality prong of the class certification

inquiry. The requested list would also be relevant to Plaintiff's need to show

numerosity." (internal citation omitted)). As the Northern District of Illinois

explained:

> Moreover, the information plaintiff seeks in the contested first and second requests for production is clearly relevant to class discovery; specifically, to the issues of numerosity, commonality, and typicality. As explained above, plaintiff proposes a class of persons who received faxed advertisements without a proper opt out notice, with whom Quill did not have an EBR, and from whom Quill did not have prior express permission or invitation to send such faxes (Compl. at ¶ 20). Plaintiff's requests seek, for example, copies of all faxed advertising documents, documents showing express permission or invitation to receive such faxes, and documents indicating an EBR with the recipients of the facsimiles.
>
> ***As we made clear to Quill in multiple court hearings, the Court cannot permit Quill on one hand to contest class certification and on the other hand deny plaintiff the discovery relevant to its position that a class should be certified***.

*Whiteamire Clinic, P.A. v. Quill Corp.*, No. 12 C 5490, 2013 WL 5348377, at *3

(N.D. Ill. Sept. 24, 2013) (emphasis added);

In the same vein, "[o]utbound dial lists are relevant to establish the issues of numerosity and commonality under Federal Rule of Civil Procedure 23(a) and are therefore discoverable." *Thomas v. Fin. Corp. of Am.*, No. 3:19-CV-152-E, 2019 WL 5157022, at *1 (N.D. Tex. Oct. 10, 2019) (compelling the production of similar data sought here); *Doherty v. Comenity Capital Bank & Comenity Bank*, No. 16CV1321-H-BGS, 2017 WL 1885677, at *4 (S.D. Cal. May 9, 2017) ("The Court finds that outbound dial lists are relevant to establish the issues of numerosity and commonality under Federal Rule of Civil Procedure 23(a) and are therefore discoverable.").

Also analogous, a Court in the Eastern District of Pennsylvania has held in a TCPA case while compelling the same data:

> Frey has shown that the outbound call list is relevant to class certification and to the merits of his claim. *See, e.g.*, *Gossett v. CMRE Fin. Servs.*, 142 F.Supp.3d 1083, 1087 (S.D. Cal. 2015) ("This court finds that the outbound call lists are relevant to the class claims and meritorious claims and defenses in this case and overrules [the defendant's] objections to the requests."). The call records can be used to determine which calls were made to cell phone numbers, a fact that is relevant to the numerosity and typicality requirements of Rule 23(a). *See Thrasher v. CMRE Fin. Servs., Inc.*, No. 14-cv-1540, 2015 WL 1138469 at *2 (S.D. Cal. March 13, 2015) ("The court finds that the outbound call list is reasonably calculated to identify the number and recipients of calls made during the class period, which is relevant to Rule 23 requirements."). (*See* Doc. No. 36 at p. 12 (defining the putative class as all individuals to whom Frontier or its vendor made a non-emergency telephone call "to a cellular telephone number or to a number where the recipient is charged for the call").) It is also relevant to the question of liability and damages under the TCPA. *See* 47 U.S.C. § 227(b)(1)(A)(3) (prohibiting calls "using any automatic telephone

dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . ."); *id.* § 227(b)(3)(B) (creating a private right of action to recover "for actual monetary loss" caused by a violation of the TCPA or "to receive $500 in damages for each such violation").

EAG argues that Frey is not entitled to this personal identifying information pre-class certification, but, as discussed below, the Court did not bifurcate the discovery period in this matter. As such, Frey was required to seek discovery on both his individual claim and his class claim at the same time and could not wait until after the Court ruled on his motion for class certification to request this relevant information.

*Frey v. Frontier Utils. Ne. Llc*, No. 19-2372-KSM, 2020 U.S. Dist. LEXIS 260620

*5-6 (E.D. Pa. Apr. 13, 2020). For the same reasons in *Frey*, the motion to compel

should be granted here. As the Plaintiff mentioned above, there is a single

discovery period. As one court summarized when granting a motion to compel for

the calling records in a TCPA case:

> This information will assist Plaintiff's experts in determining which phone numbers were tied to cellular phones, which calls were for telemarketing purposes, which numbers were on the National Do Not Call Registry ("NDNCR") and which calls were made using an automatic telephone dialing system ("ATDS"). The information is therefore relevant to the numerosity, commonality, and typicality inquiries the Court will undertake to decide Plaintiff's motion for class certification under Rule 23.

*See Mey v. Frontier Commc'ns Corp.*, No. 13-cv-01191-MPS, ECF No. 102 (D.

Conn. Dec. 5, 2014).  Here, like *Mey*, the Plaintiff, or his expert, will determine

which calls qualify for membership in the class in order to prepare this case for

class certification. Because the sought-after Call Records are plainly relevant to

contested elements of Rule 23, including numerosity, this Court should compel their production.

Separately, Call Records are relevant to class-wide damages. Pertinent here, a TCPA plaintiff may bring "an action to recover for actual monetary loss from [a violation of the TCPA], or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3)(B). Defendant is therefore liable for no less than $500 in damages for each of its violations of the TCPA. *See Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1167 (S.D. Ind. 1997) ("§ 227(b)(3)(B) . . . provides for a minimum penalty of [$]500 for each violation of the TCPA").

The Defendant's objections should be overruled. First, while loanDepot stated that it would meet and confer on the records sought, it was made clear during the meet and confer that they would not produce the Call Records without a motion to compel. Second, with respect to scope, the Plaintiff had offered to limit the production to pre-recorded messages sent to individuals (a) where the information came from the same place as the Plaintiff's information and (b) calls sent after a "STOP" request had been made. However, loanDepot still refused to produce the requested documents. As a result of refusing to compromise in good faith, loanDepot should be compelled to produce the calling records Plaintiff initial sought.

**4. If the Defendant has Evidence of Consent to Make the Pre-Recorded Calls at Issue, it Should Produce it.**

The Plaintiff also seeks to compel a fulsome response to the following:

**INTERROGATORY NO 7:** If you contend that any putative class member provided consent to receive solicitation telephone calls, state all facts in support of that contention and identify the date(s) on which and the means by which you contend consent was obtained and the language present on the website it was contained on.

The TCPA exempts from its scope telemarketing calls made with consumers' prior express written consent.  *E.g.,* 47 U.S.C. 47 U.S.C. 227(b)(1)(A).  "Prior express consent" exists where a consumer has (a) clearly stated that the telemarketer may call, and (b) clearly expressed an understanding that the call will be made for the purpose of encouraging the purchase of goods or services. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 F.C.C.R. 1830 ¶ 7 (FCC 2012).

In February of 2012, the Federal Communications Commission reiterated:

Should any question about the consent arise, the seller will bear the burden of demonstrating that a clear and conspicuous disclosure was provided and that unambiguous consent was obtained.

*See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd 1830, 1844 (Feb. 12, 2012).

While loanDepot claims it only makes calls to individuals that have consented to receive them, and has asserted such as an affirmative defense, it has not produced any such evidence. *Sowders v. Scratch Fin., Inc.,* 2024 U.S. Dist.

LEXIS 23204, *11 (S.D. Oh., 2024) *citing Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017) ("Express consent is not an element of a plaintiff's prima facie case but is an affirmative defense"). As another court has held in a TCPA case when compelling similar information:

> If defendant cannot substantiate this defense with documents or information responsive to the interrogatory, it should say so under verification and withdraw that defense.

*Martin v. Bureau of Collection Recovery*, No. 10 C 7725, 2011 WL 2311869, at *1 (N.D. Ill. June 13, 2011). As such, if Defendant has such evidence, it should be produced.  If the Defendant does not have such evidence, it should drop, or be prohibited from maintaining its consent defense.  The Plaintiff has a legitimate need for this information and a reasonable expectation that it be produced and loanDepot's objections to producing information it has explicitly put at issue should be overruled or loanDepot should be prohibited from maintaining its defense.

### 5.  Complaints About Other Individuals Who Received Unwanted Telemarketing Calls are Relevant to Damages in this Case.

The Plaintiff is also moving to compel the following request:

**DOCUMENT REQUEST NO 5:** Please produce all complaints or do-not-call requests concerning outbound calls made by you or by any vendor of yours for allowing or making allegedly unlawful or unauthorized outbound calls. This request, but is not limited to, any

written complaints (litigation or pre-litigation) received by you, any response sent, and any internal correspondence about the same.

The TCPA also allows for a damages award to be increased, up to treble damages, if the violation is found to be knowing or willful. *See* 47 U.S.C. § 227(b)(3). Here, the Plaintiff seeks similar information which has previously been compelled in other TCPA lawsuits:

> Similarly, the Court finds allegations of other violations of the TCPA or the FCCPA to be relevant to Mr. Critchlow's allegations. *See Bratcher v. Navient Sols., Inc.*, No. 3:16-cv-519-J-20JBT, 2017 U.S. Dist. LEXIS 35015, 2017 WL 895739, at *2 (M.D. Fla. Mar. 2, 2017) (finding both "formal and informal prior complaints" relevant to whether the defendant's actions were intentional under either the TCPA or FCCPA); *Osborne v. Gila, LLC*, No. 15-62585-cv-COOKE/TORRES, 2016 U.S. Dist. LEXIS 190574, 2016 WL 7508260, at *1-2 (S.D. Fla. May 24, 2016) (finding prior complaints to be relevant to whether the defendant willfully violated the TCPA); *Morser v. Hyundai Capital Am., Inc.*, No. 2:15-cv-117-FtM-29CM, 2015 U.S. Dist. LEXIS 97494, 2015 WL 4527016, at *3 (M.D. Fla. July 27, 2015) ("A finder of fact could conclude that the existence of multiple complaints suggests that Hyundai was aware it was violating the TCPA."); *see also McCaskill v. Navient Sols., Inc.*, 178 F. Supp. 3d 1281, 1294-95 (M.D. Fla. 2016) (considering other allegations of TCPA violations but finding them insufficient to grant summary judgment); [*10] *Lardnerv. Diversified Consultants Inc.*, No. 1:13-cv-22751-UU, 2014 U.S. Dist. LEXIS 68572, 2014 WL 1979221, at *1 (S.D. Fla. May 8, 2014) ("If there is prior litigation finding that Defendant violated the TCPA using the same practices as it did in the present action, then this evidence would support a finding that Defendant knew it was violating the TCPA.").

*Critchlow v. Sterling Jewelers, Inc.*, No. 8:18-cv-96-T-30JSS, 2018 U.S. Dist. LEXIS 222933, at *9 (M.D. Fla. Nov. 13, 2018).

There is also no meaningful dispute that this information may possibly be introduced at trial. In fact, the Fourth Circuit Court of Appeals affirmed a jury verdict holding a defendant vicariously liable and subject to willful damages under the TCPA following a 5-day trial. *See Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643 (4th Cir. 2019) *certiorari* denied *Dish Network v. Kr.*, 2019 U.S. LEXIS 7573 (U.S., Dec. 16, 2019). In that lawsuit, the defendant's history of receiving prior complaints, their responses to those complaints and settlements of such lawsuits were all issues considered by the jury. *See Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643, 662 (4th Cir. 2019) ("The court documented the many occasions on which Dish noted SSN's noncompliance and failed to act. The trial court catalogued the lawsuits and enforcement actions brought against Dish for telemarketing activities, none of which prompted the company to seriously improve its business practices…When it learned of SSN's noncompliance, Dish repeatedly looked the other way…The district court also noted the half-hearted way in which Dish responded to consumer complaints, finding that the evidence shows that Dish cared about stopping complaints, not about achieving TCPA compliance.") As there is no meaningful dispute that it is possible that the exact evidence that the Plaintiff seeks could be put into evidence at trial and as a result, the information sought it discoverable. Indeed, when granting a similar motion to compel in a TCPA case, another Court held that "Defendant's argument that the information need not be produced because it is not admissible under Federal

Rule of Evidence 404(b) is without merit. *See* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."). Thus, the Motion will be granted." *Bratcher v. Navient Sols., Inc.,* No. 3:16-cv-519-J-20JBT, 2017 U.S. Dist. LEXIS 35015, at *6-7 (M.D. Fla. Mar. 2, 2017).

loanDepot's objections should be overruled. The terms for the requests sought are not vague. The plaintiff seeks internal "correspondence" about the "complaints", both of which are easy to comprehend. Furthermore, loanDepot's assertion of the TCPA as a strict liability statute doesn't account for the trebling of damages that is available, as discussed above. Finally, simply because some of the responsive information may be publicly filed lawsuits does not excuse the Defendant from responding to the discovery.

## VII.  CONCLUSION

Mr. Hubble respectfully requests the Court: (1) grant the instant Motion; and (2) grant such other and further relief as this Court deems necessary and proper.

PLAINTIFF,
By his attorney

*s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Max S. Morgan, Esquire
THE WEITZ FIRM, LLC
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com

George T. Blackmore (P76942)
BLACKMORE LAW PLC
1100 Owendale Drive, Suite M
Troy, MI 48083
T: (833) 343-6743
F: (855) 744-4419
E: george@blackmore.law

*Attorneys for Plaintiff and the Putative*
*Classes*