# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

**ROBERT HUBBLE,** *on behalf of himself and all others similarly situated,*

    *Plaintiff*,

v.

**LOANDEPOT.COM, LLC,**

    *Defendant.*

_____/

Case No. 1:24-CV-11173-TLL-PTM

Hon. Patricia T. Morris

## DEFENDANT LOANDEPOT.COM, LLC'S OPPOSITION TO PLAINTIFF ROBERT HUBBLE'S MOTION FOR A PROTECTIVE ORDER

Defendant loanDepot.com, LLC ("loanDepot") hereby respectfully submits this Opposition to Plaintiff Robert Hubble's ("Plaintiff") Motion for a Protective Order (the "Motion") as follows:

### I.  INTRODUCTION

Plaintiff has filed a lawsuit over telephone calls but is refusing to produce his telephone records. His Motion is utterly meritless.

The records help resolve a key factual dispute in the case. loanDepot contends Plaintiff consented to receive the calls at issue by filling out an online consent form. Plaintiff disputes having provided consent and denies being interested in mortgage products at the time. To prove Plaintiff provided the consent—both to loanDepot and other companies—and was in the market for mortgage services during the relevant timeframe, loanDepot subpoenaed Plaintiff's phone records to see, *inter alia*, whether he was contacting (or was being contacted

1

by) other mortgage or finance companies. The presence or absence of such calls is relevant to loanDepot's defense in the case—that Plaintiff specifically invited loanDepot, and others, to contact him.

To be sure, Plaintiff has waived his privacy interest in his phone records by filing this suit. Still, loanDepot has offered to limit the subpoena to only a very narrow timeframe— March 1, 2024, and May 1, 2024. This is eminently reasonable considering the consent record was provided on March 27, 2024 and the calls at issue took place from March 27, 2024 through April 24, 2024. *See* Plaintiff's Complaint ("Compl."), at ¶ 45.

Plaintiff has refused this offer and is taking the position that only 800 numbers should be produced. Yet the numbers used by loanDepot were not 800 numbers—and other finance companies likewise often call from non-800 numbers.

At bottom, Plaintiff has failed to demonstrate good cause to quash loanDepot's subpoena to Verizon. Rather than setting forth "specific facts showing clearly defined and serious injury", as is his burden, Plaintiff offers only vague and conclusory allegations that the subpoena is "overbroad" and "irrelevant". *See* Mot. at 2, 5. Plaintiff's Motion should be denied.

## II. BACKGROUND

On May 2, 2024, Plaintiff filed a Complaint against loanDepot, alleging violations of the TCPA based on loanDepot's purported live and prerecorded calls to Plaintiff's cell phone from March 27, 2024 through April 24, 2024, made without

his prior express written consent, and despite his requests to cease such calls. *See* Compl., at ¶¶ 29-48.

Based on loanDepot's records, it received Plaintiff's phone number in connection with an online request made to https://27.mysupersamples.com/ on or about March 27, 2024. *See* Declaration of Rod Halperin ("Halperin Decl."), at ¶ 5.

On September 23, 2024, Plaintiff issued a subpoena to Verizon Wireless seeking his call detail records for the period of November 1, 2023 through June 1, 2024. *See* Mot. at 3. Although Verizon provided Plaintiff with complete, unredacted call data, Plaintiff, on October 17, 2024, submitted a heavily redacted version of the records, omitting all information except for calls allegedly made by loanDepot. *See* Declaration of Brittany A. Andres ("Andres Decl."), at ¶ 3.

To independently obtain a complete and accurate record of Plaintiff's call history, loanDepot issued its own subpoena to Verizon on October 22, 2024, seeking call log data from October 1, 2023, to August 1, 2024, related to Plaintiff's phone number. Andres Decl., at ¶ 4.

Upon receiving notice of this subpoena, Plaintiff's counsel requested to meet and confer regarding the scope of the records being sought. *Id.*, at ¶ 5. On October 24, 2024, counsel for the parties met and conferred. *Id.*, at ¶ 6. Plaintiff's counsel expressed his concerns about potential privacy and third-party privacy issues if the telephone numbers included in Plaintiff's carrier records were disclosed. *Id.* In response, loanDepot's counsel explained that the requested records are essential to

evaluate its consent defense—particularly whether Plaintiff had provided consent to receive calls from loanDepot—and to determine whether other telemarketers had contacted Plaintiff during the relevant time period. *Id*

To address Plaintiff's privacy concerns, loanDepot offered to narrow the subpoena's scope significantly, reducing the request from a 10-month period to a more limited 2-month window of call records. *Id*., at ¶ 7. Moreover, although Plaintiff's counsel proposed providing a list of "commercial numbers" (i.e., numbers beginning with "800" or "888") from the records, this would still leave significant gaps, as many telemarketers use non-800 numbers. Furthermore, it remained unclear whether Plaintiff would provide a comprehensive and accurate list of such numbers.

In a further effort to avoid unnecessary motion practice and resolve the matter amicably, loanDepot reached out to Verizon to advise them to hold off on producing records. *Id*., at ¶ 8. Despite this, Plaintiff proceeded with filing the instant Motion.

### III. LEGAL STANDARD

"Parties may obtain discovery on any non-privileged matter that is relevant to any party's claim or defense, and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The scope of discovery should be "accorded a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

The Court may, for good cause shown, order discovery of any matter relevant to the subject matter involved in a pending lawsuit. Fed. R. Civ. P. 26(b)(1). Conversely, also for good cause shown, the Court may enter a protective order to

prohibit or limit discovery from any person from whom discovery is sought. Fed. R. Civ. P. 26(c). "The burden of establishing good cause for a protective order rests with the movant." *Nix v. Sword,* 11 F. App'x 498, 500 (6th Cir. 2001).

To show good cause, the movant must articulate ***specific facts*** showing "clearly defined and serious injury resulting from the discovery sought and cannot rely on conclusory statements." *Nix,* 11 F. App'x at 500. (citations and internal quotation marks omitted).

## IV.     ARGUMENT – PLAINTIFF HAS FAILED TO DEMONSTRARTE GODO CAUSE THAT HE IS ENTITLED TO A PROTECTIVE ORDER

### A.     The Call Records Sought in loanDepot's Subpoena to Verizon Plainly Seeks Relevant Information.

Parties may obtain discovery about any nonprivileged matter relevant to any party's claim or defense and proportional to the needs of the case. *Proto Gage, Inc. v. Fed. Ins. Co., Inc.*, No. 21-12286, 2022 WL 1598621, at *2 (E.D. Mich. May 19, 2022). Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. *Underwood v. Riverview of Ann Arbor*, No. 08-CV-11024-DT, 2008 WL 5235992, at *1 (E.D. Mich. Dec. 15, 2008) (quoting Fed. R. Civ. P. 26(b)(1)).

In a matter involving allegations of violations of the TCPA, call records from telephone carriers are indisputably relevant. *See Lucas v. Telemarketer Calling From (407) 476-5670 & Other Tel. Numbers*, No. 1:12-CV-630, 2014 WL

12656102, at *2 (S.D. Ohio May 22, 2014) (acknowledging that the information sought by a subpoena regarding call records "is highly relevant"); *Perrong v. Golden Rule Ins. Co.*, No. 119CV01940TWPDML, 2020 WL 13557776, at *3 (S.D. Ind. Mar. 17, 2020) (denying the plaintiff's motion to quash/for protective order regarding the defendant's subpoena to Verizon holding that "the calls logs are relevant in a discovery sense."). This is because call records are essential for determining whether a defendant made the calls in question and whether the plaintiff gave prior consent, which are key issues in TCPA litigation.

Indeed, subpoenas for calling records are standard discovery in a case alleging illegal telephone calls, i.e., violations of the TCPA. *See Molnar v. NCO Fin. Sys., Inc.*, No. 13CV131-BAS (JLB), 2014 WL 3371414, at *3 (S.D. Cal. July 8, 2014) (granting defendant complete and unredacted telephone records, including records of irrelevant calls where plaintiff acknowledged some of calls at issue might not appear on telephone records); *Katz v. Liberty Power Corp., LLC*, No. 18-CV-10506-ADB, 2019 WL 957129, at *4 (D. Mass. Feb. 27, 2019) (denying the plaintiff's motion for protective order regarding third party subpoenas to telephone carriers).

Here, Plaintiff contends—without any support—that his phone records from Verizon are "irrelevant." Mot. at 8. But Plaintiff is wrong for at least two reasons.

First, based on loanDepot's records, it received Plaintiff's phone number in connection with an online request made to https://27.mysupersamples.com/ on or

6

about March 27, 2024.[1] *See* Halperin Decl., at ¶ 5. Records of calls made by *other* marketing partners as a result of Plaintiff's visit to the Website on March 27, 2024 are relevant to the issue of whether Plaintiff provided his consent. *See Katz*, 2019 WL 957129, at *3 ("Plaintiffs' account records may be relevant to defenses, including that the calls in question were consented to"); *Keim v. ADF Midatlantic, LLC*, No. 12-80577-CIV, 2016 WL 720967, at *2 (S.D. Fla. Feb. 22, 2016) ("Because Defendants put forth a defense of prior express consent, Defendants have made a sufficient showing that a portion of Plaintiff's telephone records are relevant to one of their defenses in this case."); *Molnar*, 2014 WL 3371414, at *2 ("Defendant should be afforded the opportunity to obtain evidence of prior express consent to defend itself against liability").

Second, records reflecting calls Plaintiff received as a result of visits to other websites similar to https://27.mysupersamples.com/, would significantly undermine his contention that he never provided his telephone number to loanDepot. *See* Compl., at ¶ 47 ("Mr. Hubble did not provide his consent to receive these calls from loanDepot"). loanDepot is entitled to take discovery to challenge

---

[1] It is well established that under the TCPA, a party may obtain TCPA consent via an intermediary. *See Hill v. Universal Fid., L.P.,* No. 5:16-CV-02957, 2018 WL 2291421, at *7 (N.D. Ohio Apr. 26, 2018) ("under the TCPA, a caller may obtain the 'consumer's prior express consent through an intermediary.'") (quoting *Baisden v. Credit Adjustments, Inc*., 813 F.3d 338, 343 (6th Cir. 2016); *Smith v. ExamWorks, LLC*, No. 8:21-CV-02746-PX, 2024 WL 622102, at *4 (D. Md. Feb. 14, 2024) (same). Indeed, the FCC has expressly ruled that "the TCPA does not prohibit a caller from obtaining a consumer's prior express consent through an intermediary." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act*, 30 FCC Rcd. 7961, 7990–91 (July 10, 2015). Therefore, "a party that receives an individual's phone number indirectly may nevertheless have consent to call that individual." *Fober v. Mgmt. & Tech. Consultants, LLC*, 886 F.3d 789, 793 (9th Cir. 2018).

the veracity of Plaintiff's allegations and has a right to independently investigate those allegations. *See also Reno v. W. Cab Co.,* No. 2:18-cv-00840-APG-NJK, 2019 WL 6310716, at *4 (D. Nev. Nov. 25, 2019) (noting that "a party is generally entitled to engage in multiple forms of discovery as a means of testing the opposing party's positions").

Plaintiff's reliance on *Mey v. Interstate Nat'l Dealer Servs., Inc.*, No. 1:14-CV-01846-ELR, 2015 WL 11257059 (N.D. Ga. June 23, 2015) is misplaced. In *Mey*, the court quashed a subpoena demanding call records for a ***four-year*** time period. *Mey*, 2015 WL 11257059, at *1. In contrast, the subpoena to Verizon issued here is temporally limited and was more so after the parties' met and conferred. *See* Andres Decl., at ¶ 7 (limiting the scope of the subpoena to a 2-month timeframe from March 1, 2024, and May 1, 2024). On this distinction alone, *Mey* is inapplicable.

Courts have even permitted the discovery of a plaintiff's calling records with a time frame larger than 2-months. *See Katz*, 2019 WL 957129, at *4 (allowing a subpoena for all contracts, inbound and outbound phone call logs, billing statements, invoices, features, and payment history for a **two-year period**); *Fitzhenry v. ADT Corp.*, No. 14-80180, 2014 WL 12874055, at *1 (S.D. Fla. Aug. 8, 2014) (allowing a subpoena directed to a third party carrier to obtain phone records for a **one year period**); *Davis v. Reliance First Cap., LLC*, No. 7:22-CV-00018-BO, 2022 WL 17085598, at *3 (E.D.N.C. Nov. 18, 2022) (declining to limit

defendant's use of plaintiff's call logs provided by a third-party carrier for a **thirteen month period**). Therefore, loanDepot's subpoena seeking call records for a 2-month time period is not overbroad as Plaintiff suggests. *See Davis v. Reliance First Cap., LLC*, No. 7:22-CV-00018-BO, 2022 WL 17085598, at *3 (E.D.N.C. Nov. 18, 2022) ("Courts routinely allow TCPA defendants to discover plaintiffs' call logs for more than just the date of solicitation and the date of alleged consent").

As such, the call records sought in loanDepot's subpoena to Verizon seeks relevant information and Plaintiff's Motion should be denied.

> **B.    loanDepot's Need for the Call Records Outweighs any Privacy Interest Plaintiff May Have.**

When a defendant demonstrates a need for a plaintiff's carrier records, this outweighs any privacy right a plaintiff may have over such records. *See Molnar*, 2014 WL 3371414, at *3 ("To the extent that any privacy right exists over these records, defendant's need for the records in presenting a defense in this action outweighs any privacy right possessed by plaintiffs."). And while the Court should properly aim to balance the needs of the case against the Plaintiff's right to privacy, only where records are entirely outside the scope of discovery or immaterial should a protective order be granted. *See Keim*, 2016 WL 720967, at *2 (stating "[t]his Court can envision a case where a concern of invading privacy interests arises if a defendant seeks the content of a plaintiffs telephone records, including the content of text messages, photographs, or videos sent or received"); *Mey*, 2015 WL

9

11257059, at *1 (quashing subpoena demanding call records for a *four-year* time period).

Accordingly, in TCPA cases, courts have found that a limited production of a plaintiff's telephone records *does not* invade a plaintiff's privacy interests. *See Keim*, 2016 WL 720967, at *2 (stating that "[t]he Court does not find that a limited production of Plaintiff's telephone records, as ordered below, will invade Plaintiff's privacy interests"); *Mintz v. Mark Bartelstein & Assocs., Inc.*, 885 F.Supp.2d 987, 1001 (C.D. Cal. 2012) (finding "the disclosure of telephone numbers, as well as the date, time, and duration of calls does not represent a significant intrusion of [p]laintiff's privacy."); *Davis v. Reliance First Cap., LLC*, No. 7:22-CV-00018-BO, 2022 WL 17085598, at *2 (E.D.N.C. Nov. 18, 2022) (holding that the plaintiff failed to show that he had a valid privacy interest in the call logs, text messages, or internet search history he voluntarily turned over to the carrier); *Molnar*, 2014 WL 3371414, at *3 (overruling the plaintiffs' objections to documents requested from telephone carrier).

*Molnar* is directly on point. In *Molnar*, the parties had a discovery dispute over the defendant's request for call records for the plaintiffs' telephone numbers from the telephone carriers. *Molnar*, 2014 WL 3371414, at *3. The defendant argued that records were relevant, but the plaintiff objected on "relevance grounds, arguing only calls from NCO are relevant, and the documents requested would disclose irrelevant information, including records of all calls to and from doctors,

10

lawyers, family or friends." *Id.* The plaintiffs "propose[d] that defendant provide all telephone numbers used by defendant so that plaintiffs might redact all other calls from the telephone records before providing a redacted copy of the records to defendant." *Id.* However, the Court stated the "[d]efendant is entitled to ***complete and unredacted telephone records***...To the extent that any privacy right exists over these records, defendant's need for the records in presenting a defense in this action outweighs any privacy right possessed by plaintiffs." *Id.* (emphasis added).

Here, loanDepot is seeking 2 months of Plaintiff's calling data from Verizon. *See* Andres Decl., at ¶ 7. Plaintiff argues that disclosure of such complete records would invade his privacy because "[d]ocuments responsive to these requests will contain nearly all calls made to or by third parties that have nothing to do with this matter." Mot. at 9. But this argument was specifically rejected in *Molnar* and the Court should do so here.

loanDepot has demonstrated that Plaintiff's phone records are relevant to its consent defense in this case. Therefore, any privacy right that Plaintiff may purport to have in his phone records is outweighed by loanDepot's demonstrable need for the records to present a defense to Plaintiff's TCPA claims. *See Molnar,* 2014 WL 3371414, at *3 ("To the extent that any privacy right exists over these records, defendant's need for the records in presenting a defense in this action outweighs any privacy right possessed by plaintiffs."); *Perrong*, 2020 WL 13557776, at *3 ("The court's weighing of relevance, proportionality, and privacy concerns leads it

to deny [plaintiff's] motion to quash/for protective order").

Moreover, the Verizon records will likely disclose only the date, time, duration, and inbound and outbound phone numbers. loanDepot is not seeking the content of any of the calls. Therefore, this Court should follow numerous courts across the country and find that seeking such information "does not represent a significant intrusion"[2] on an individual's privacy. *See Keim*, 2016 WL 720967, at *2; *Katz*, 2019 WL 957129, at *4; *Davis v. Reliance First Cap., LLC*, No. 7:22-CV-00018-BO, 2022 WL 17085598, at *2.

As to Plaintiff's concerns regarding third-party privacy, loanDepot has already stated that it will neither call nor disclose the numbers obtained from the calls records. *See* Andres Decl., at ¶ 7. In any event, the parties have already entered into a stipulated protective order in this case to protect the dissemination of the records. *See* ECF Nos. 23, 24. Therefore, Plaintiff's third-party privacy concerns are unfounded. *See Mbazomo v. ETourandTravel, Inc.*, No. 2:16-CV-02229-SB, 2017 WL 2346981, at *6 (E.D. Cal. May 30, 2017) (compelling production of call logs while prohibiting receiving party and counsel from contacting any person appearing on the call logs to protect third party privacy).

Further, the statutory provisions cited by the Plaintiff simply do not apply here. The first statute cited by Plaintiff is the Telephone Records and Privacy

---

[2] *Davis*, 2022 WL 17085598, at *3.

12

Protection Act of 2006 ("TRPPA"). *See* Mot. at 10. However, the privacy concerns that Congress was attempting to address through the passage of the TRPPA are in no way implicated by the subpoena at issue. As noted by the legislative history, the TRPPA was intended to curb both identity fraud and stalking.

> The bill targets "pretexting" and other fraudulent tactics by unscrupulous businesses that operate in a gray area of the law. It prohibits unauthorized access or trafficking in confidential phone records. The bill also provides enhanced criminal penalties for anyone who engages in large-scale operations to violate its provisions or who discloses or uses such fraudulently obtained records in furtherance of crimes of violence, including domestic violence and stalking, or to kill, injure, or intimidate a witness, juror, confidential informant, or law enforcement officer

H.R. REP. 109-395, 2, 2006 U.S.C.C.A.N. 1911, 1912 (March 16, 2006). Plaintiff does not assert that he is in danger of having his identity stolen by loanDepot via the information supplied by the Verizon subpoena. Congress's clear intent was to reduce the use of telephone subscriber data in the commission of criminal fraud and violent crime, not provide civil litigants with a shield to obstruct legitimate discovery.

Indeed, courts that examined this issue have soundly rejected Plaintiff's claims with respect to the TRPPA.

> Plaintiff argues that the Telephone Records and Privacy Protection Act of 2006 makes the information defendants seek confidential. Not true. The act merely criminalizes obtaining telephone records through false or fraudulent means or accessing customer accounts without prior authorization. See 18 U.S.C. § 1039; Nat'l Cable & Telecommunications Ass'n v. F.C.C., 555 F.3d 996, 999 (D.C. 2009). The act creates no free-standing right of privacy protecting relevant

information related to phones exempt from discovery.

*Lureen v. Doctor's Assocs., Inc.,* No. 4:17-CV-04016-LLP, 2017 WL 4179995, at *6 (D.S.D. Sept. 20, 2017).

Second, the Telecommunications Act of 1996 ("Telecom Act") cited by the Plaintiff contains a specific exemption for disclosures by telecommunications carriers as required by law.

> ***Except as required by law*** or with the approval of the customer, a telecommunications carrier that receives or obtains customer proprietary network information by virtue of its provision of a telecommunications service shall only use, disclose, or permit access to individually identifiable customer proprietary network information in its provision of (A) the telecommunications service from which such information is derived, or (B) services necessary to, or used in, the provision of such telecommunications service, including the publishing of directories.

47 U.S.C. § 222(c)(1) (emphasis added).

In the past, Courts have dismissed similar arguments that the Telecom Act prevents the release of such information in response to a subpoena. *See Wilson v. Nextel Commc'ns*, 296 F. Supp. 3d 56, 59 (D.D.C. 2017), appeal dismissed sub nom. *Wilson v. Nextel Commc'ns, Inc*., No. 17-7178, 2018 WL 3198908 (D.C. Cir. May 7, 2018) (holding that communications company did not violate statute by its disclosure of customer information in response to subpoena issued, given that statutes provided that carriers were allowed to disclose information "as required by law."); *ICG Commc'ns, Inc. v. Allegiance Telecom*, 211 F.R.D. 610, 614 (N.D. Cal. 2002) (holding that privacy provisions of Telecommunications Act do not preclude

court-ordered discovery); *see also Parastino v. Conestoga Tel. & Tel. Co.*, 1999 WL 636664 (E.D.Pa.1999) (finding disclosure was permissible pursuant to § 222(c)(1) where plaintiff had conceded that a valid subpoena would qualify as an exception under that provision of the act).

As such, loanDepot's need for Plaintiff's call data from Verizon for a 2-month timeframe outweighs any purported privacy concerns Plaintiff has. Plaintiff's Motion should be denied.

## V. CONCLUSION

Based on the foregoing reasons, loanDepot respectfully requests that this Court deny Plaintiff's Motion to Quash/for a Protective Order.

TROUTMAN AMIN, LLP

By: */s/ Brittany A. Andres*
    Eric J. Troutman
    Brittany A. Andres
    400 Spectrum Center Drive
    Suite 1550
    Irvine, CA 92618
    troutman@troutmanamin.com
    brittany@troutmanamin.com
    Tel: (949) 350-5612

*Attorneys for Defendant loanDepot.com, LLC*

Dated: November 14, 2024

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2024, I electronically sent the foregoing to counsel of record for the Plaintiff.

/s/ *Brittany A. Andres*
Brittany A. Andres