# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

**ROBERT HUBBLE,** *on behalf of himself and all others similarly situated,*

    *Plaintiff*,

v.

**LOANDEPOT.COM, LLC,**

    *Defendant.*

_____/

Case No. 1:24-CV-11173-TLL-PTM

## DEFENDANT LOANDEPOT.COM, LLC'S OPPOSITION TO PLAINTIFF ROBERT HUBBLE'S MOTION TO COMPEL DOCUMENT PRODUCTION

Defendant loanDepot.com, LLC ("loanDepot") hereby respectfully submits this Opposition to Plaintiff Robert Hubble's ("Plaintiff") Motion to Compel a Document Production (the "Motion") as follows:

## I.   INTRODUCTION

Plaintiff's motion asserts boilerplate arguments suggesting records he seeks are relevant without considering the actual language of the demands he served or the context of the case and his intended class definitions. Moreover, that Plaintiff provided his express written consent to the calls in question further undermines the relevance for the information he seeks. As such, Plaintiff has failed to demonstrate relevance of the information sought in many of his demands.

As to the remaining demands, loanDepot's objections as to form and burden are valid and should be sustained. Notably, loanDepot's meritorious objections were

1

carefully crafted at great cost necessitated by the thoughtlessly broad scope of the demands unsuited to the needs of this case. As such, Plaintiff's Motion should be denied.

## II. FACTUAL BACKGROUND

### A. Plaintiff Sues Over Calls He Received After an Online Webform Submission Requested Contact at his Number.

On March 27, 2024, an individual filled out a form on a website—https://27.mysupersamples.com/—requesting a phone call that might meet the consumer's needs. Ghasemzadeh Decl., at ¶ 7. The lead submission was transferred to loanDepot as a potentially qualified lender and loanDepot attempted calls to the number at issue as a result. Ghasemzadeh Decl., at ¶ 8.

On May 2, 2024, Plaintiff then sued loanDepot alleging loanDepot violated the Telephone Consumer Protection Act ("TCPA") by making live and prerecorded calls to his phone without consent. *See* Plaintiff's Complaint ("Compl."), at ¶¶ 30, 47. Plaintiff alleges he requested the calls to stop but loanDepot continued to call him. *See* Compl., at ¶¶ 35-40. Although Plaintiff alleges he owns the phone number at issue, he asserts that he did not fill out the webform or provide consent. As such, Plaintiff contends loanDepot is liable for these calls, even if it had the consent of the individual who filled out the webform.

### B. Plaintiff Seeks to Represent Two Vaguely Worded Classes.

Based on the above alleged violations, Plaintiff seeks to represent two

2

nationwide classes:

> **Prerecorded Class**: Plaintiff and all persons within the United States who from four years prior to the filing of this action through class certification Defendant called using an artificial or prerecorded voice message for the same purpose Plaintiff was called.
>
> **Pre-Recorded Stop Class**: All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant called (2) using an artificial or prerecorded voice (3) despite previously requesting to no longer be contacted.

*Id.*, at ¶ 60.

### C. Plaintiff Served Improper Demands Seeking Overly Broad Discovery.

On July 22, 2024, Plaintiff served a first set of overly broad written discovery requests, including interrogatories and requests for production of documents. *See* Declaration of Eric J. Troutman ("Troutman Decl."), at ¶ 3.

On August 21, 2024, loanDepot served its objections and responses to Plaintiff's first set of written discovery. Due to Plaintiff's overly broad written discovery requests, loanDepot's counsel spent numerous hours carefully crafting objections. *See* Troutman Decl., at ¶ 4.

On August 22, 2024, Plaintiff's counsel requested to meet and confer regarding loanDepot's responses to Plaintiff's interrogatory nos. 1, 2, 3, 7, and 9 and requests for production nos. 5, 11 and 15. *See* Troutman Decl., at ¶ 5.

On September 23, 2024, the parties met and conferred and discussed loanDepot's responses to the above requests. Plaintiff indicated he would narrow

3

the scope of some of the requests. Specifically, he stated he would limit interrogatory no. 7 and request for production no. 5 to the same lead source as Plaintiff's lead. No other limitations were discussed. *See* Troutman Decl., at ¶ 6. Even with limiting interrogatory no. 7 and request for production no. 5 to the same lead source as Plaintiff's lead, loanDepot's counsel advised that it would have to discuss the burden of obtaining such data with its client. *See* Troutman Decl., at ¶ 7. Once loanDepot's counsel discussed Plaintiff's requests with its client, it had a better understanding of the massive burden that would be imposed in obtaining such data responsive to Plaintiff's requests. In an effort to compromise, loanDepot proposed certain stipulations, including stipulating to numerosity in an effort to avoid an unnecessary motion to compel. *See* Troutman Decl., at ¶ 8. Despite an effort to compromise, Plaintiff proceeded with filing this Motion.

On November 14, 2024, the parties engaged in a further meet and confer discussion in an effort to resolve Plaintiff's Motion to Compel. As a further effort to meet and confer, loanDepot proposed providing more stipulations and an agreement to produce a specific set of data if a class is certified. Moreover, loanDepot's counsel offered to provide templates of websites for the specific lead source at issue. The parties are currently working through such details. *See* Troutman Decl., at ¶ 9.

### III. <u>LEGAL STANDARD</u>

The scope of discovery available to parties in a civil action is outlined in

4

Federal Rule of Civil Procedure 26. As a general matter, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Discovery is not permitted when it "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive [or] the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(i-ii). Discovery is further prohibited when its burden or expense outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(C)(iii). When any of these circumstances arise, the court must limit discovery "[o]n motion or on its own." Fed. R. Civ. P. 26(b)(2)(C).

The Sixth Circuit has stated that "a plaintiff [may not] be permitted to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (internal quotations and citation omitted). Accordingly, the trial court must exercise its "wide discretion" to balance the needs and rights of both Plaintiff and Defendants in resolving these discovery disputes. *Scales v. J.C. Bradford and Co.*, 925 F.2d 901, 906 (6th Cir. 1991) (citing *Trevino v. Celanese Corp.*, 701 F.2d 397 (5th Cir. 1983)).

## IV. ARGUMENT

### A. Interrogatory No. 2 is Overly Broad and the Demand is Not Proportional to the Needs of the Case.

"Parties may obtain discovery regarding any nonprivileged matter that is **relevant** to any party's claim or defense and **proportional** to the needs of the case…" Fed. R. Civ. P. 26(b) (emphasis added).

Interrogatory No. 2 requires loanDepot to identify "all employees or vendors involved in making outbound calls as part of [its] contact to the Plaintiff. This includes, but is not limited to, (a) third parties that [it] contract[s] with who make telemarketing calls to generate leads, (b) the dialing system platform or provider used to make calls (c) where the phone numbers to make the calls is obtained." This demand is patently overly broad given loanDepot is the only defendant named in the lawsuit. There is no basis, therefore, to compel loanDepot to identify every single employee and every single vendor involved in its making of outbound calls for whatever reason, which is what Plaintiff seeks.

Plaintiff's failure to establish relevance ends the inquiry—the motion to compel Interrogatory No. 6 must be denied. *See Gilchrist v. Bank of Am., N.A.*, No. 14-5062-RJB, 2014 WL 6471847, at *3 (W.D. Wash. Nov. 18, 2014) (denying the plaintiffs' motion to compel where the discovery requests were irrelevant to their TCPA claims).

Regardless, loanDepot's remaining objections are meritorious as well. The

6

burden associated with identifying every single employee and every single vendor involved in making outbound calls as part of its contact to Plaintiff is undue. This is especially true as it is unclear what "involved in making outbound calls" means. Indeed, compiling a complete and accurate count of all such employees and vendors could take hundreds of hours. And, as already noted, this effort plainly fails the required proportionality review of Rule 26 because there is no need for this information to begin with given there are no vicarious liability issues.

But the interrogatory does not end there. It also seeks the dialing system platform or provider used to make calls and where the phone numbers to make the calls is obtained. As to the dialing system platform provider used, loanDepot already identified Genesys Cloud (formerly PureCloud, formerly PureConnect) as the system used to contact Plaintiff in its interrogatory responses. Hence, no further response is required.

As to the final piece, "where the phone numbers to make the calls is obtained," it is simply unclear what calls and what phone numbers Plaintiff is referring to here.

In the Motion, Plaintiff argues this information is "straightforward and should be provided" because the interrogatory simply asks "where did the Defendant obtain the Plaintiff's number? What platform was used to contact him? Who contacted him on behalf of loanDepot." Mot. at 13. But Interrogatory No. 2 does not ask these "straightforward" questions. Instead, it seeks much broader

7

information. For instance, Interrogatory No. 2 does not inquire about the specific individual who contacted Plaintiff. Rather, it asks loanDepot to identify "***all employees or vendors involved in making outbound calls*** as part of [its] contact to the Plaintiff." This is an overly broad request because it asks for information about *all* individuals and vendors who may have had *any* role in making outbound calls, without defining what "involved in making outbound calls" actually means. It could encompass a wide range of employees or third parties unrelated to the actual contact with Plaintiff. As such, Plaintiff's Motion to Compel a response to Interrogatory No. 2 should be denied.

      **B.    Interrogatory No. 3 Does Not Seek Relevant Information and loanDepot Has Asserted Valid Burden Objections.**

Interrogatory No. 3 requires loanDepot to "[i]dentify and describe the work of each employee or vendor identified in response to Interrogatory No. 2."

Again, Plaintiff has failed to establish any relevance for the information sought in Interrogatory No. 3. *See Gilchrist*, 2014 WL 6471847, at *3. On this basis alone, the Motion should be denied.

Even if this demand seeks relevant information—it does not—loanDepot has established a valid burden objection. Identifying and describing the work of every such employee or vendor identified in response to Interrogatory No. 2 is a challenging process given it is unclear who may be considered "involved in making outbound calls." Searching for such employees and vendors responsive to this

8

interrogatory would be incredibly time consuming. And then providing a description of the work done by each employee or vendor may consume hundreds of hours of time. *See* Declaration of Saeed Ghasemzadeh ("Ghasemzadeh Decl."), at ¶ 10.

Given the complete lack of relevance of this information Plaintiff seeks, the burden imposed by Interrogatory No. 3 is plainly disproportionate to the needs of this case. As such, Plaintiff's Motion to Compel a response to Interrogatory No. 3 must be denied.

    **C.**    **RFP No. 15 Imposes an Undue Burden on loanDepot and Plaintiff Has Not Shown Any Need for the Demanded Records at this Stage of the Case.**

It is a basic tenet of civil discovery that the need for discovery must outweigh the burden on a defendant. *See Helena Agri-Enterprises, LLC v. Great Lakes Grain, LLC,* 988 F.3d 260, 274 (6th Cir. 2021) ("It is now "the power—and *duty*—of the district courts actively to manage discovery and to limit discovery that exceeds its proportional and proper bounds."") (quoting *Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 306 (S.D. Ind. 2016)); *Healy v. Milliman, Inc.,* No. C20-1473-JCC, 2021 WL 5283953, at *1 (W.D. Wash. Nov. 12, 2021) ("the Court must limit discovery if it determines that the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case…").

Request for Production ("RFP") No. 15 requires loanDepot to "produce all documents containing any of the following information for each outbound

telemarketing call sent by [it] or [its] vendors on any lead generation or customer acquisition campaigns, including but not limited, to the campaign that contacted Plaintiff. This includes, but is not limited to, the following information: the date and time; the caller ID; any recorded message used; the result; identifying information for the recipient; and any other information stored by the call detail records."

As an initial matter, Plaintiff has failed to establish the relevance of the documents he seeks. While Plaintiff states that the records "are highly relevant to the numerosity, commonality, typicality, and predominance elements of rule 23 and the calculation of class-wide damages,"[1] Plaintiff fails to explain *how* such records are relevant to Rule 23 elements. Presumably the relevance is to establish the numerosity provision of the Rule 23 inquiry for class certification. But loanDepot has offered to stipulate to numerosity on this issue—and does so now for avoidance of doubt.

Yet this demand is plainly overly broad because: i) it is not limited to the system used to make the calls to Plaintiff; and ii) it is not limited to calls where the lead source was the same as Plaintiff. As such, the request for calls made unrelated to such leads—and unrelated to the system used to make calls to Plaintiff—is plainly improper.

---

[1] Mot. at 14.

While Plaintiff cites to various cases compelling the production of call records[2], he points to no case where an overly broad production of records *unrelated to class members* were compelled. No such case exists for the simple reason that discovery is properly limited to the issues in the case. *See Calhoun v. Richards,* No. C08-5101RBL/JRC, 2009 WL 3663395, at *1 (W.D. Wash. Nov. 3, 2009) (noting "the scope of that discovery will be strictly limited to the relevant issues in this case."); Fed. R. Civ. P. 26(b) ("the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense"). Since Plaintiff cannot establish the relevance of the overly broad set of records he seeks, Plaintiff's Motion to Compel a response to RFP No. 15 must be denied.

Even if the demand sought a relevant and reasonably particularized set of documents in existence (it does not), however, the burden imposed by the demand on loanDepot exceeds its usefulness in this case. As already explained, there is no need for this production given the contours of the intended classes here. Yet the burden of production of these records would be incredibly high given that loanDepot does not have a complete set of the calls Plaintiff seeks and—even if

---

[2] *See* Mot. at 14-17 (citing *Cahill v. GC Servs. Ltd. P'ship*, No. 3:17-cv-01308-GPCMDD, 2018 WL 1791910, at *4 (S.D. Cal. Apr. 16, 2018); *Mbazomo v. ETourandTravel, Inc.*, No. 2:16-CV-02229-SB, 2017 WL 2346981, at *5 (E.D. Cal. May 30, 2017); *Whiteamire Clinic, P.A. v. Quill Corp.,* No. 12 C 5490, 2013 WL 5348377, at *3 (N.D. Ill. Sept. 24, 2013); *Thomas v. Fin. Corp. of Am.*, No. 3:19-CV-152-E, 2019 WL 5157022, at *1 (N.D. Tex. Oct. 10, 2019); *Doherty v. Comenity Capital Bank & Comenity Bank*, No. 16CV1321-H-BGS, 2017 WL 1885677, at *4 (S.D. Cal. May 9, 2017); *Frey v. Frontier Utils. Ne. Llc*, No. 19-2372-KSM, 2020 U.S. Dist. LEXIS 260620 *5-6 (E.D. Pa. Apr. 13, 2020)).

such calls were in loanDepot's possession or control—reviewing each call would require a call-by-call review consuming hundreds, if not thousands, of hours. *See* Ghasemzadeh Decl., at ¶¶ 13-19.

Further, RFP No. 15 seeks records that do not exist, or at least not in loanDepot's possession or control. Specifically, no single record exists containing all data elements Plaintiff demands and such records would have to be compiled.

Even more basically, the demand does not set forth a reasonably particularized category of records to be produced. Notice, the demand actually requires the production of all documents that possess "any" of the information sought. So, for instance, any record containing any "date and time" may be responsive. So too any record containing a "caller ID." The point is, this demand does not seek any document in existence—but rather *any* document that might possess *any* data element pertaining to a phone call. As such, this demand is incredibly overbroad and, quite literally impossible to respond to. Plaintiff's Motion to Compel a response to RFP No. 15 must be denied.

> **D. Interrogatory No. 7 Imposes an Undue Burden on loanDepot and Plaintiff Has Not Shown Any Need for the Demanded Records at this Stage of the Case.**

Interrogatory No. 7 states: "[i]f you contend that any putative class member provided consent to receive telephone calls, state all facts in support of that contention and identify the date(s) on which the means by which you contend consent was obtained and the language present on the website it was contained on."

This interrogatory works an incredible undue burden on loanDepot. First, in order to respond to his interrogatory, loanDepot must identify putative class members. The prerecorded class, as defined in the Complaint, includes "all persons within the United States who from four year prior to the filing of this action through class certification [loanDepot] called using an artificial or prerecorded voice messages for the same purpose Plaintiff was called…" Compl., at ¶ 37. So, in order to identify class members, loanDepot would have to identify every single individual who received an artificial or prerecorded voice message from loanDepot during a multi-year time period. It would take dozens of hours to accomplish this first step. *See* Ghasemzadeh Decl., at ¶ 11.

Then, once putative class members are identified (they cannot be), this interrogatory seeks for loanDepot to state all facts in support of the contention that such class member provided consent to receive calls. In order to do so, loanDepot would have to conduct a file by file search of each phone number and review the consent records for each. Such a search and preparation of a response as to each class member would consume hundreds of hours if not longer. *See* Ghasemzadeh Decl., at ¶ 11.

Next, this interrogatory asks for loanDepot to identify the date(s) on which consent was obtained. But given the prevalence of multiple lead submissions, a large percentage of loanDepot's lead records come from multiple sources. So, searching for the date of each lead submission to correspond with a particular phone

number would be incredibly time-consuming and a phone-number-by-phone-number process. *See* Ghasemzadeh Decl., at ¶ 11.

Lastly, this interrogatory asks for loanDepot to identify the language present on the website the consent was contained on. However, such records are not in the possession or control of loanDepot. *See Est. of Young Through Young v. Holmes*, 134 F.R.D. 291, 293 (D. Nev. 1991) ("[p]roduction may only be required if the documents are in the possession, custody or control of the party upon whom the request was served."). And regardless, the need to line up each specific consent record to each specific call would take thousands of hours as each called party would need to be identified and tied back to the consent record. *See* Ghasemzadeh Decl., at ¶ 11.

None of this information is needed at this stage. To avoid needless privacy invasions of parties who will not be class members, evidence related to the specific *merits* of each individual class members claim need not be produced at the certification stage. *See City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 439 (3d Cir. 2017) ("plaintiff need not be able to identify all class members at class certification—instead, a plaintiff need only show that 'class members can be identified.'"); *Rikos v. Procter & Gamble Co.,* 799 F.3d 497, 505 (6th Cir. 2015) ("Whether the district court properly certified the class turns on whether Plaintiffs have shown, for purposes of Rule 23(a)(2), that they *can prove*— not that have already shown—that all members of the class have suffered the "same

14

injury."); *Williams v. PillPack LLC*, 343 F.R.D. 201, 211–12 (W.D. Wash. 2022) (stating "[t]he goal of class certification 'is not to identify every class member at the time of certification….'") (quoting *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 658 (4th Cir. 2019). Should Plaintiff successfully certify the case, then confidential financial information of the sort sought can be produced.

loanDepot recognizes discovery has not been bifurcated in this case. Nonetheless, the needs of the litigation at this stage do not justify the profound burden Plaintiff seeks to impose on loanDepot at this time. This is especially true as Plaintiff has yet to explain why he needs the data he demands in order to certify the case. As such, Plaintiff has made no showing of need sufficient to overcome loanDepot's meritorious burden objections at this time. Plaintiff's Motion to Compel a response to Interrogatory No. 7 must be denied.

> **E.     RFP No. 5 Imposes an Undue Burden on loanDepot and Plaintiff Has Not Shown Any Need for the Demanded Records at this Stage of the Case.**

RFP No. 5 requires loanDepot to "produce all complaints or do-not-call requests concerning outbound calls made by you or by any vendor of yours for allowing or making allegedly unlawful or unauthorized outbound calls. This request, but is not limited to, any written complaints (litigation or pre-litigation) received by you, any response sent, and any internal correspondence about the same."

Plaintiff argues complaints and do-not-call requests are relevant to damages.

*See* Mot. at 20-21. However, the discovery requests seeking complaints in the cases cited by Plaintiff were more narrowly tailored than the overly broad scope of RFP No. 5 here. *See Osborne v. Gila, LLC,* No. 15-62585-CV, 2016 WL 7508260, at *1 (S.D. Fla. May 24, 2016) (seeking complaints between the defendant and any governmental agency and the Better Business Bureau); *Lardner v. Diversified Consultants Inc.*, No. 1:13-CV-22751-UU, 2014 WL 1979221, at *1 (S.D. Fla. May 8, 2014) (focusing on prior litigation where the defendant was found to have violated the TCPA). In other cases cited by Plaintiff, the defendant failed to demonstrate undue burden. *See Bratcher v. Navient Sols., Inc.,* No. 3:16-CV-519-J-20JBT, 2017 WL 895739, at *2 (M.D. Fla. Mar. 2, 2017) (finding the defendant has not shown it would be unduly burdensome to respond to the discovery items). As such, these cases are inapplicable.

      Even if complaints and do-not-call requests in RFP No. 5 were relevant (it is not), the demand seeks to impose a massive undue burden on loanDepot. In order to respond to this request, loanDepot would have to first search its numerous employees for any complaint concerning outbound calls made by it for allowing or making allegedly unlawful or unauthorized outbound calls. But loanDepot does not allow its employees to make unlawful or unauthorized outbound calls because it will only make live outbounds calls to consumers when the consumers have provided prior express written consent to receive calls form loanDepot. *See* Ghasemzadeh Decl., at ¶ 4. As such, no responsive records exist.

16

Moreover, as phrased, this demand asks loanDepot to produce *all* complaints or do-not-call-requests concerning outbounds calls for *any* purpose across *all* channels. This request is not even limited to the type of calls that Plaintiff received. Therefore, calls related to loanDepot's servicing arm would also fall within the scope of this request but would be irrelevant to any party's claims or defenses. Searching for all such complaints and do-not-call requests across all channels over a multi-year time span would be incredibly time-consuming. *See* Ghasemzadeh Decl., at ¶ 12.

Once loanDepot is able to locate such complaints and do-not-call requests (it cannot), this demand requires loanDepot to search for any response sent and any internal correspondence about the same. This task would take hundreds of additional hours because various employees' communication channels would need to be searched to even locate such communications. *See* Ghasemzadeh Decl., at ¶ 12.

Further, RFP No. 5 seeks records that do not exist, or at least not in loanDepot's possession or control. Specifically, RFP No. 5 seeks complaints or do-not-call requests concerning outbound calls made by any of loanDepot's vendors. Rather obviously, loanDepot does not have records of complaints or do-not-call requests made to its vendors (if any) and a party need not produce records that are not in its possession or control. *See Est. of Young Through Young v. Holmes*, 134 F.R.D. 291, 293 (D. Nev. 1991) ("[p]roduction may only be required if the

documents are in the possession, custody or control of the party upon whom the request was served.").

Plaintiff cites *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019), where the court approved treble damages because the defendant's "actions demonstrated indifference to ongoing violations and a conscious disregard for compliance with the law." *Id*. at 662. But *Krakauer* involved a defendant who contracted with a telemarketer, who essentially by definition would dial non-customers who had not previously consented. Here, there are no vicarious liability issues implicated as loanDepot is the only defendant in this suit and the only alleged entity who made the calls.

As such, Plaintiff's Motion to Compel a response to RFP No. 5 must be denied.

## V. <u>CONCLUSION</u>

Based on the foregoing reasons, loanDepot respectfully requests this Court deny Plaintiff's Motion to Compel in its entirety.

TROUTMAN AMIN, LLP

By: */s/ Brittany A. Andres*
    Eric J. Troutman
    Brittany A. Andres
    400 Spectrum Center Drive
    Suite 1550
    Irvine, CA 92618
    troutman@troutmanamin.com
    brittany@troutmanamin.com
    Tel: (949) 350-5612

Dated: November 18, 2024

*Attorneys for Defendant loanDepot.com, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 18, 2024, I electronically sent the foregoing to counsel of record for the Plaintiff.

/s/ *Brittany A. Andres*
Brittany A. Andres