## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

**ROBERT HUBBLE,** *on behalf of himself and all others similarly situated,*

    *Plaintiff,*

v.

**LOANDEPOT.COM, LLC,**

    *Defendant.*

_____/

Case No. 1:24-CV-11173-TLL-PTM

### DECLARATION OF ERIC J. TROUTMAN IN SUPPORT OF DEFENDANT LOANDEPOT.COM, LLC'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DOCUMENT PRODUCTION

I, Eric J. Troutman, declare:

1.      I am an attorney and partner at Troutman Amin, LLP, and am lead counsel for loanDepot.com, LLC ("Defendant") in this matter.

2.      I am over the age of eighteen (18) years, and I have direct and personal knowledge of the matters set forth in this Declaration. If called and sworn, I could and would competently testify to the following facts. I submit this Declaration in support of Defendant loanDepot.com, LLC's Opposition to Plaintiff's Motion to Compel Document Production.

3.      On July 22, 2024, my firm received Plaintiff's first set of written discovery requests, including interrogatories and requests for production of documents. A true and correct copy of Plaintiff's first set of written discovery is

1

attached hereto as **Exhibit "A".**

4.    On August 21, 2024, loanDepot served its objections and responses to Plaintiff's first set of written discovery. Due to Plaintiff's overly broad written discovery requests, my firm spent numerous hours carefully crafting objections. A true and correct copy of loanDepot's responses and objections to Plaintiff's first set of written discovery is attached hereto as **Exhibit "B".**

5.    On August 22, 2024, Plaintiff's counsel requested to meet and confer regarding loanDepot's responses to Plaintiff's interrogatory nos. 1, 2, 3, 7, and 9 and requests for production nos. 5, 11 and 15. A true and correct copy of said email is attached hereto as **Exhibit "C".**

6.    On September 23, 2024, my firm met and conferred with Plaintiff's counsel and discussed loanDepot's responses to Plaintiff's requests. Plaintiff indicated he would narrow the scope of some of the requests. Specifically, he stated he would limit interrogatory no. 7 and request for production no. 5 to the same lead source as Plaintiff's lead. No other limitations were discussed at this time. A true and correct copy of said email memorializing such discussion is attached hereto as **Exhibit "D".**

7.    At the meet and confer, my firm advised that we would have to discuss the burden of obtaining such data with loanDepot.

8.    In an effort to compromise, we proposed certain stipulations, including stipulating to numerosity in an effort to avoid an unnecessary motion to compel.

9.     On November 14, 2024, I engaged in a further meet and confer discussion with Plaintiff's counsel in an effort to resolve Plaintiff's Motion to Compel. As a further effort to meet and confer, we proposed providing more stipulations and an agreement to produce a specific set of data if a class is certified. Moreover, we offered to provide templates of websites for the specific lead source at issue. The parties are currently working through such details.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 18th day of November 2024 in Irvine, California.

*/s/Eric J. Troutman*
Eric J. Troutman

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

**ROBERT HUBBLE**, *on behalf of himself and all others similarly situated*,

*Plaintiff,*

v.

**LOANDEPOT.COM, LLC**,

*Defendant.*

Civil Case No.: 1:24-cv-11173

## PLAINTIFF'S FIRST SET OF DISCOVERY

## INSTRUCTIONS FOR INTERROGATORIES

1.      Pursuant to Rule 33, submit your answers to the interrogatories herein in writing and under oath to the undersigned counsel within 30 days of the date of service on you. If any of these interrogatories cannot be answered in full, then you should answer to the fullest extent possible, specifying the reasons for your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portion or portions. In answering these interrogatories, furnish such information as is available to you, regardless of whether this information is obtained directly by you, through your agents or

1

representatives or by any of your attorneys. For each interrogatory, please identify all persons who provided information used in answering it.

2.      These interrogatories are continuing in nature. In accordance with Rule 26, you are required to supplement your answers to the interrogatories when new or additional information becomes known to you.

## **INSTRUCTIONS FOR REQUESTS FOR PRODUCTION**

3.      Pursuant to Rule 34(b)(2)(B), on the date production is due, Defendant shall produce all the responsive documents or specify a reasonable date certain on which they will be produced.

4.      In accordance with Rule 34(b), you shall provide written responses to the following requests and shall produce the requested documents as they are kept in the ordinary and usual course of business or shall organize and label the documents to correspond with the categories in this request.

5.      A draft and a final version are two distinct documents.

6.      If Defendant withholds the production of any responsive document on the grounds that the document is privileged or otherwise protected, Defendant shall state in a privilege log the nature of the claim of privilege or protection; the type and nature of the document; the date of the document; the author(s), the

2

addressee(s), and recipient(s) of the document; the document's present location; and any other information that will enable Plaintiff and the Court to assess the applicability of the privilege or protection.

## DEFINITIONS

The following terms shall have the following meanings, even when not capitalized or bolded:

7.      **"Communication"** includes all forms of correspondence, including, but not limited to, letters, emails, voicemails, text messages, instant messages, or social media messages.

8.      **"Defendant"** means the defendant named in this lawsuit who is being served with these requests and includes, without limitation, any of its past or present offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, partners, joint venturers, officers, directors, employees, agents, attorneys or representatives.

9.      **"Describe"** means to identify and explain fully the characteristics, nature and substance of a given thing, action, communication or event, to set forth all details, physical properties and dimensions of a physical thing inquired about, and to specify all pertinent dates, locations, causes, purposes, effects and results of the thing, action, communication or event inquired about.

10.    "**Document**" means any writing as defined in Rule 34(a)(1)(A), however produced, reproduced, archived or stored, within your possession or subject to your control, of which you have knowledge or to which you now have or previously had access, including all ESI.

11.    "**Identify**" (when used in reference to a document) means to state the date of preparation of the document, its author, the sender (if any), the recipient (if any), the nature of the document (e.g., letter, memorandum or tape) and other means of identification sufficient to specify the document for purposes of a request for production, and to further state its present location and custodian. If any such document was, but no longer is, in your possession or custody or subject to your control, describe what disposition was made of it and give the name, address and telephone number of the person presently having possession, custody or control of the document.

12.    "**Identify**" (when used in reference to an natural person) means to state that person's full name, title, business address, telephone number, email address, occupation and employer, along with a statement of whether that person is represented by your counsel in this litigation.

13.    "**Identify**" (when used in reference to an entity) means to state the entity's full name, address, telephone number, state of incorporation or organization and web address. Unless it otherwise appears from the context, a

4

request for the identity of a person relates to all persons in the relevant classification or category, and the request for the identity of an entity includes all affiliated entities.

14.    "**Person**" means any natural person or legal entity, including, without limitation, any business or governmental entity or association.

15.    "**Plaintiff**" means the Plaintiff in this lawsuit.

16.    "**Policy**" means any instruction, practice, procedure, directive, routine, guideline, rule, course of conduct or code of conduct that was or has been recognized, adopted, issued or followed by you—regardless of whether written or unwritten, formal or informal, recorded or unrecorded.

17.    "**TCPA**" means the Telephone Consumer Protection Act, 47 U.S.C. § 227.

18.    "**Telemarketing**" means a telecommunication that could have generated or was intended to generate leads, customers or sales for you or any franchisee of yours within the United States. A communication is telemarketing even though it (1) had other, additional purposes (e.g., fulfillment of a partially completed transaction or verification of information); (2) was to a person who had consented to receive it; (3) was to a person who had a prior existing business relationship with you; (4) was not made by you; and/or (5) was not made for your exclusive or direct benefit.

5

19.     "**Third party**" means any natural person, partnership, association, corporation, joint venture, or other business or legal entity not owned or controlled by you.

20.     "**Vendor**" means any third party under contract with, hired by, employed by, paid by or working for you, directly or indirectly, for purposes of telemarketing or phone-based activities or services, including, but not limited to, generating leads, warm transfers, hot transfers or any other call transfers, making outbound telemarketing calls, or tracking or aggregating data related to any of those activities, including, but not limited to, any co-defendant.

21.     "**You**" means the entity to which these requests are propounded and includes, without limitation, any of its past or present offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, partners, joint venturers, officers, directors, employees, agents, attorneys or representatives.

22.     All other words shall have their ordinary definition as defined by Merriam-Webster's online dictionary, located at http://www.merriam-webster.com/

## RELEVANT TIME PERIOD

Unless otherwise indicated, these requests shall pertain to the time period starting four years before the filing of the original complaint in this case and

continuing through the present and shall include all documents and information that relate in whole or in part to such period, or to events or circumstances during such period, even though dated, prepared, generated or received outside of that period.

## INTERROGATORIES

1.     Identify each person who provided the information to answer interrogatories in this case and specify the interrogatories about which each such person provided information.

**ANSWER:**

2.     Identify all employees or vendors involved in making outbound calls as part of your contact to the Plaintiff. This includes, but is not limited to, (a) third parties that you contract with who make telemarketing calls to generate leads (b) the dialing system platform or provider used to make calls (c) where the phone numbers to make the calls is obtained.

7

**ANSWER:**

3.      Identify and describe the work of each employee or vendor identified in response to Interrogatory No. 2.

**ANSWER**:

4.      Identify all sub-vendors or other third parties involved in any contact that is responsive to Interrogatory No. 2.

**ANSWER:**

5.      Identify each of the individuals that spoke with Plaintiff from your company or any of its vendors.

**ANSWER**:

6.      If you contend that Plaintiff provided consent to receive solicitation telephone calls, state all facts in support of that contention and identify the date(s) on which and the means by which you contend consent was obtained.

**ANSWER:**

7.     If you contend that any putative class member provided consent to receive solicitation telephone calls, state all facts in support of that contention and identify the date(s) on which and the means by which you contend consent was obtained and the language present on the website it was contained on.

**ANSWER:**

8.     If you contend that a third party made the calls alleged in the complaint, identify that third party and state all facts in support of the same.

**ANSWER:**

9.     Identify all communications you've had with any third party, other than your counsel, regarding this lawsuit.

**ANSWER:**

10.     Identify by make, model, structure and location the system(s), platform(s), and/or equipment used by you, or any vendor, used to contact the Plaintiff.

**ANSWER:**

11.     Identify any person (whether employed by you or not) whom you have disciplined, reprimanded, or taken similar action against for allowing or making allegedly unlawful or unauthorized outbound calls. In your answer, please identify all persons involved in any investigation, describe the reasons for your disciplinary action or reprimand, and describe the action taken against the person.

**ANSWER**:

**DOCUMENT REQUESTS**

1.     Please produce all non-attorney-client-privileged documents identified in or used to research or draft responses to interrogatories in this case.

**RESPONSE:**

2.     Please produce all documents supporting or contradicting any affirmative defense made in any answer by you to any complaint in this case.

**RESPONSE:**

3.     Please produce all documents related to Plaintiff, including, but not limited to, all documents evidencing your relationship with Plaintiff or your investigation into outbound calls made to Plaintiff.

10

**RESPONSE:**

4.      Please produce all documents relating to any failure by a vendor of yours to abide by your policies or any agreement you had relating to the sending of outbound calls.

**RESPONSE:**

5.      Please produce all complaints or do-not-call requests concerning outbound calls made by you or by any vendor of yours for allowing or making allegedly unlawful or unauthorized outbound calls. This request, but is not limited to, any written complaints (litigation or pre-litigation) received by you, any response sent, and any internal correspondence about the same.

**RESPONSE:**

6.      All contracts or documents representing agreements with any vendor that provided you with the Plaintiff's telephone number or information.

**RESPONSE:**

7.      All internal communications at your company regarding any vendor that provided you with the Plaintiff's telephone number or information.

**RESPONSE:**


8.      All contracts or documents representing agreements with any third party that dialed the calls to the Plaintiff.

**RESPONSE:**


9.      All communications with any third party that dialed the calls to the Plaintiff.

**RESPONSE:**


10.     All internal communications at your company regarding any third party that dialed the calls to the Plaintiff.

**RESPONSE:**


11.     All communications regarding any lead generation or customer acquisition services you perform by permitting third parties to make telemarketing calls.

**RESPONSE:**

12

12.     Please produce all documents relating to insurance coverage of the acts alleged by Plaintiff, including, but not limited to, all potentially applicable policies issued by any insurer and all communications with any such insurers, including, but not limited to, reservation-of-rights letters, regardless of whether or not such coverage purports to exclude the acts alleged in this matter and regardless of whether or not such insurers have declined coverage in this matter.

**RESPONSE:**

13.     Please produce all indemnification agreements under which a third party may be responsible for satisfying all or part of a judgment that may be entered against you in this action, and all communications with those third parties.

**RESPONSE:**

14.     Please produce all documents related to policies for compliance with the TCPA or the FCC's regulations thereunder and all documents necessary to construct a timeline of when each policy was in force. This request specifically includes, but is not limited to, policies related to the following:

a) compliance with the TCPA, including, but not limited to the rules, regulations, opinions, advisories, comments or filings of the Federal Communications Commission that relate to the TCPA or 47 C.F.R. § 64.1200;

b) obtaining or verifying prior express consent;

c) complying with E-SIGN Act, 15 U.S.C. §§ 7001 *et seq.*

**RESPONSE:**

15.    Please produce all documents containing any of the following information for each outbound telemarketing call sent by you or your vendors on any lead generation or customer acquisition campaigns, including, but not limited, to the campaign that contacted the Plaintiff. This includes, but is not limited to, the following information:

- the date and time;

- the caller ID;

- any recorded message used;

- the result;

- identifying information for the recipient; and

- any other information stored by the call detail records.

**RESPONSE:**

14

16.     All communications with any third party concerning this litigation other than your attorney.

**RESPONSE:**

RESPECTFULLY SUBMITTED AND DATED this July 22, 2024.

*/s/ Anthony Paronich*
Anthony Paronich
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone:  (617) 485-0018
Facsimile:  (508) 318-8100

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

**ROBERT HUBBLE,** *on behalf of himself*            Case No. 1:24-CV-11173-TLL-PTM
*and all others similarly situated,*

     *Plaintiff,*
v.

**LOANDEPOT.COM, LLC,**

     *Defendant.*

_____/

**DEFENDANT LOANDEPOT.COM, LLC'S OBJECTIONS AND RESPONSES TO**
**PLAINTIFF ROBERT HUBBLE'S INTERROGATORIES, SET ONE**

COMES NOW, Defendant, loanDepot.com, LLC, ("loanDepot") submits the following

Responses to Plaintiff Robert Hubble's Interrogatories, Set One.

**PRELIMINARY STATEMENT**

These responses are made solely for the purpose of this action. Each response is subject

to all appropriate objections which would require the exclusion of any statement contained herein

if the Request were asked or if the answer were made by a witness present and testifying in Court.

All objections and grounds are reserved and may be interposed at the time of Trial.

The responding party has not yet completed its investigation of the facts relating to this

action, its discovery in this action, or its preparation for Trial of this action. Consequently, these

Responses are given without prejudice to the right of any responding party to produce at the time

of Trial any and all subsequently discovered evidence relating to the proof of presently known

material facts, and to proof of subsequently discovered material facts.

Except for explicit facts admitted herein, no admissions of any nature whatsoever are

implied or should be inferred. The fact that any Request herein has been answered should not be

1

taken as an admission or acceptance of the existence of any fact or facts set forth or assumed by such Request, or that such answer constitutes admissible evidence.

It is assumed by the responding party that the propounding party and all parties to this lawsuit possess and are familiar with all discovery proceedings in this action. Therefore, when a Request calls for information which is contained in the discovery materials available to all parties, said Request will be answered only by reference to those discovery materials. The preliminary statement is incorporated herein by reference to <u>each</u> of the Responses as if stated in full.

## **GENERAL OBJECTIONS**

loanDepot answers Plaintiff's interrogatories subject to the following General Objections. These objections form a part of loanDepot's answer to each request and are set forth here to avoid their repetition. The General Objections may also be separately stated in loanDepot's answers to individual requests for emphasis and clarity. And a lack of a specific reference should not be construed as a waiver of any General Objection.

The answers set forth below are based upon loanDepot's interpretation of the language used in the requests, and loanDepot reserves its right to amend or supplement its answers if Plaintiff asserts an interpretation that differs from that of loanDepot's.

The answers and objections are based on loanDepot's present knowledge, information, and belief. loanDepot reserves the right to amend, revise, supplement, correct or clarify any answer or objection.

loanDepot objects to the requests to the extent they purport to impose requirements, obligations, and duties beyond those prescribed by the Federal Rules of Civil Procedure or Local Rules.

## INTERROGATORIES

**INTERROGATORY NO 1:** Identify each person who provided the information to answer interrogatories in this case and specify the interrogatories about which each such person provided information.

**RESPONSE:** These responses were drafted by loanDepot's counsel on behalf of loanDepot and were verified by the affiant.

**INTERROGATORY NO 2:** Identify all employees or vendors involved in making outbound calls as part of your contact to the Plaintiff. This includes, but is not limited to, (a) third parties that you contract with who make telemarketing calls to generate leads (b) the dialing system platform or provider used to make calls (c) where the phone numbers to make the calls is obtained.

**RESPONSE:** Objection, interrogatory is not a single request—as the code requires—but a sprawling series of requests, each of which separately inappropriate and violate the Rules.

As an initial matter, the special definition of "you" complicates this interrogatory. As defined by Plaintiff, "you" means loanDepot and "includes, without limitation, any of its past or present offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, partners, joint venturers, officers, directors, employees, agents, attorneys or representatives." Therefore, in order to respond to this interrogatory, loanDepot would be required to seek information from its directors, employees, attorneys, and other organizations to determine whether they ever obtained made outbound calls to Plaintiff and determine the dialing system platform it uses and where it obtained the phone numbers to make the calls. But their methods or processes are not relevant to this case. For example, if a former loanDepot director made calls to Plaintiff that wasn't authorized by loanDepot, such information would still fall within the scope of this interrogatory,

3

yet such information would have absolutely no relevance to this case.

Next, this interrogatory literally requires loanDepot to determine the identity of *any employee* involved in making *any* outbound calls as part of its contact to the Plaintiff. Yet not every such individual might be at issue in this case. This is especially true because this interrogatory is not limited to either the calls at issue or the same type of calls at issue that Plaintiff allegedly received. Moreover, the work needed to catalogue every such individual far exceeds the needs of the case.

Moreover, the calls at issue were allegedly made by loanDepot. It is not relevant *who* was involved in making outbound calls. The individuals who made outbound calls for loanDepot is not at issue in this case and is not relevant to the legal issues of this lawsuit. The primary issues in this case will be whether Plaintiff consented to receive the calls at issue and whether he revoked consent at any point. As such, this interrogatory seeks information outside the scope of discovery in this case.

More basically, there is simply no relevance to the identity of individuals that make outbound calls for loanDepot. Again, such a call was made by loanDepot. Forcing loanDepot to undertake the work of determining who might have played any role in making an outbound call to Plaintiff would require a tremendous amount of work, yet there is no need for such information in this case. As such, the interrogatory is overly broad and fails the proportionality requirements of Rule 26.

Additionally, this interrogatory is excessively burdensome as phrased. Requiring loanDepot to search for the identification of *any* employee who has *ever* been involved in making an outbound call to Plaintiff would require at least dozens of hours because various business units would have to be consulted to even find such names. The needs of this case do not justify this

search because the names of the individuals who made any call to Plaintiff do not have any conceivable relevance to the case. And the burden on loanDepot to then produce the names (if any) of unrelated third parties is excessive given the needs of the case. Further, if such names were found and provided, such information would threaten the privacy of those individuals unrelated to this case.

Next, this interrogatory seeks to identify all *vendors* involved in making outbound calls as part of any contact to Plaintiff. But the calls at issue were allegedly made by loanDepot. So it is not relevant what other vendor was involved in making outbound calls to Plaintiff because that is not what is at issue here. Indeed, other vendors who made outbound calls to Plaintiff is not at issue in this case and is not relevant to the legal issues of this lawsuit. As such, this interrogatory seeks information outside the scope of discovery in this case.

More basically, there is simply no relevance to the identity of other vendors that made outbound calls to Plaintiff. Again, such a call was made by loanDepot. Forcing loanDepot to undertake the work of determining what other vendors might have made any outbound call to Plaintiff would require a tremendous amount of work, yet there is no need for such information in this case. As such, the interrogatory is overly broad and fails the proportionality requirements of Rule 26.

Additionally, this interrogatory is excessively burdensome as phrased. Requiring loanDepot to search for the identification of *any* vendor who has *ever* been involved in making an outbound call to Plaintiff would require at least dozens of hours because various business units would have to be consulted to even find such names. The needs of this case do not justify this search because other vendors who made any call to Plaintiff does not have any conceivable

relevance to the case. And the burden on loanDepot to then produce the names (if any) of unrelated third parties is excessive given the needs of the case.

This interrogatory also seeks third parties that loanDepot contracts with who make telemarketing calls to generate leads. But this improperly assumes that loanDepot has such contracts. And again, this interrogatory would impose an undue burden on loanDepot. Assuming that loanDepot has such contracts, this interrogatory requires loanDepot to seek out all such contracts over a four-year time period. But such a task could take numerous hours and various individuals would need to be consulted to find such contracts.

Lastly, this interrogatory seeks "where the phone numbers to make the calls is obtained." However, this request is massively overbroad and imposes an extreme burden on loanDepot. In order to respond to this request, loanDepot would have to identify every phone number loanDepot Has used to make calls to Plaintiff. Then it would require loanDepot to seek out information regarding where each phone number was obtained. Such a task would take hundreds of hours and is likely an impossibly task to complete because a file-by-file review would need to be conducted of each phone number to determine its source. The needs of this case do not justify this search because only a tiny sliver of such documents would have any conceivable relevance here.

The interrogatory is also vague and ambiguous as to the terms "involved," "leads," and "dialing system platform." As these terms are not defined, it is unclear what Plaintiff means.

On the basis of these objections, loanDepot declines to respond to this interrogatory.

**INTERROGATORY NO 3:** Identify and describe the work of each employee or vendor identified in response to Interrogatory No. 2.

**RESPONSE:** Objection, this interrogatory is overly broad and imposes a massive burden on

loanDepot.

So, after loanDepot spends numerous hours identifying *every* individual and vendor in response to interrogatory no. 2, this interrogatory then requires loanDepot to take it a step further and identify and describe the work of each employee or vendor. But this obviously would impose a massive undue burden on loanDepot. In order to respond to this interrogatory, loanDepot would have to catalogue its responses to interrogatory no. 2, then either interview each person or vendor or seek further information to be able to describe the work of each such individual or person. Such a task would take hundreds of hours as a file-by-file review or an interview of each person or vendor would need to be conducted to be able to describe the work that he or she does.

All of this when the needs of the case do not justify the search. Moreover, a description of the work of each employee or vendor is not relevant to any legal issues present in this case. Indeed, the primary issue in this case will be the consent of the Plaintiff and whether he revoked consent. A description of work for every employee or vendor responsive to interrogatory no. 2 is simply not relevant.

On the basis of these objections, loanDepot declines to respond to this request.

**INTERROGATORY NO 4:** Identify all sub-vendors or other third parties involved in any contact that is responsive to Interrogatory No. 2.

**RESPONSE:** Objection, this interrogatory seeks information outside the scope of discovery in this case. The calls at issue were allegedly made by loanDepot. So, the identity of any third parties or sub-vendors used by loanDepot's vendors is not at issue in this case.

In light of the above, this interrogatory is also overly broad and imposes an undue burden on loanDepot because the interrogatory literally requires loanDepot to determine the identity of all

third parties or sub-vendors used by its vendors over a multi-year time span. Such a task could take hundreds of hours and is likely an impossible task to complete. This is especially true since loanDepot does not know what third parties or sub-vendors its vendors use, and such information is not in loanDepot's possession. As such, this interrogatory is not limited to information in the possession of loanDepot, so it calls on loanDepot to speculate as to what information may exist in the possession of third parties and improperly purports to require it to identify records outside of its possession or control. And the work needed to catalog every such third party or sub-vendor far exceeds the needs of this case. As such, the interrogatory is overly broad and fails the proportionality requirements of Rule 26.

This interrogatory is also vague and ambiguous as to the terms "sub-vendors" and "vendors."

On the basis of these objections, loanDepot declines to respond to this interrogatory.


**INTERROGATORY NO 5:** Identify each of the individuals that spoke with Plaintiff from your company or any of its vendors.

**RESPONSE:** Objection, this interrogatory seeks information outside the scope of discovery in this case. The calls at issue were allegedly made by loanDepot. But the interrogatory is not limited to communications between loanDepot and Plaintiff. Instead, the interrogatory literally requires loanDepot to determine the identity of *any* vendor that spoke with Plaintiff over a multi-year time span. Moreover, the work needed to catalog every such individual/entity far exceeds the needs of this case, given that the existence of such communications can be proven by business records and testimony from such witnesses. As such, the interrogatory is overly broad and fails the proportionality requirements of Rule 26.

Notwithstanding the foregoing objections, loanDepot responds that according to its call log with Plaintiff, Plaintiff spoke to Joseph Mascolo on June 28, 2021.

**INTERROGATORY NO 6:** If you contend that Plaintiff provided consent to receive solicitation telephone calls, state all facts in support of that contention and identify the date(s) on which and the means by which you contend consent was obtained.

**RESPONSE:** Objection, this interrogatory is vague and overly broad as to the term "you." As specially defined by Plaintiff, "you" includes loanDepot and "without limitation, any of its past or present offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, partners, joint venturers, officers, directors, employees, agents, attorneys or representatives." Therefore, in order to respond to this interrogatory, loanDepot would need to determine whether any of its officers, directors, employees, or agents obtained Plaintiff's consent to receive calls and obtain such information surrounding the consent. However, rather obviously, such consent obtained from entities other than loanDepot would not be relevant to this case.

For this reason, this interrogatory also imposes an undue burden on loanDepot as loanDepot would have to interview numerous entities, including its affiliates, subsidiaries, successors, predecessors, partners, joint venturers, officers, directors, employees, agents, attorneys or representatives to determine whether any of those entities or individuals contend that Plaintiff provided consent to obtain calls. Such an effort could take hundreds of hours.

Without waiving the above objections, loanDepot responds that on March 27, 2024, Plaintiff visited the website https://27.mysupersamples.com/, input the following information: Roberthubble10@gmail.com, 513 Arthur Rd, Lake George, MI 48633, and accepted the following disclosure:

BY CHECKING THE BOX ABOVE I EXPRESSLY CONSENT TO RECEIVE MARKETING AND INFORMATIONAL PHONE CALLS AND TEXT MESSAGES FROM SUPER-SAMPLES, UNIFIED MARKETING PARTNERS LLC, AND OUR MARKETING PARTNERS ON THE LAND LINE AND/OR MOBILE NUMBER I PROVIDED. I CONFIRM THAT THE PHONE NUMBER SET FORTH ABOVE IS ACCURATE AND I AM THE REGULAR USER OF THE PHONE. I UNDERSTAND THESE CALLS MAY BE GENERATED USING AN AUTODIALER AND MAY CONTAIN PRE-RECORDED AND ARTIFICIAL VOICE MESSAGES AND I DO NOT NEED TO CHECK THE BOX TO PARTICIPATE IN THE DEALS PROMOTED, OFFERS OR TO CLAIM A REWARD. FOR SMS MESSAGE CAMPAIGNS: TEXT STOP TO STOP AND HELP FOR HELP. MSG & DATA RATES MAY APPLY. PERIODIC MESSAGES; MAX. 30 / MONTH.

**INTERROGATORY NO 7:** If you contend that any putative class member provided consent to receive solicitation telephone calls, state all facts in support of that contention and identify the date(s) on which and the means by which you contend consent was obtained and the language present on the website it was contained on.

**RESPONSE:** Objection, this interrogatory is extremely overbroad and imposes a massive undue burden on loanDepot.

As an initial matter, this interrogatory is overly broad as to the term "you." As specially defined by Plaintiff, "you" includes loanDepot and "without limitation, any of its past or present offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, partners, joint venturers, officers, directors, employees, agents, attorneys or representatives." Therefore, in order to respond to this interrogatory, loanDepot would need to determine whether any of them made solicitation telephone calls—with or without loanDepot's knowledge—and if so, what consent was obtained to do so. This process—which is entirely unnecessary given the needs of the litigation and is mandated solely due to the thoughtless use of special definitions—would take thousands of hours. Obviously, the burden associated with such an effort is disproportionate to the needs of this case.

Even adopting a more limited definition of "You" that is focused solely on loanDepot, the interrogatory still requires an inordinate amount of work to identify each and every call that might potentially fall within the scope of this interrogatory—regardless of when the calls were sent, by which business line, and based on which consents. Yet the only possible calls at issue in this case are those made by the division of loanDepot that makes outbound calls for telemarketing purposes—which are the types of calls that were made to Plaintiff. In every other respect, therefore, the Demand is plainly overly broad and the burden imposed on loanDepot in responding is undue.

Additionally, there is no conceivable relevance to the demanded information. As the demand is not limited to calls made to class members, none of the data sought is relevant to the case with respect to information on calls to non-class members. So, Plaintiff demands a huge amount of sensitive data for people who are not—and never will be—parties to this suit. In so doing, he needlessly risks the privacy of thousands of individuals while, ironically, claiming a violation of his own privacy

To the extent Plaintiff seeks the "means" by which consent was obtained, the term "means" is vague and ambiguous. As this is not a defined term, it is unclear what Plaintiff is seeking.

Next, Plaintiff seeks the "language present on the website" consent was obtained from. This interrogatory requires loanDepot to produce records that are not in its possession or control as such records might be in the possession or control of unrelated third parties.

Moreover, because this litigation has not yet been certified for class treatment, Plaintiff's interrogatory is objectionable because it seeks class-based discovery that is not relevant at this stage of the litigation. Rather, the interrogatory appears to be intended only to burden and harass loanDepot as an attempted end-run-around of the certification process. The task of identifying

putative class members is not necessary pre-class certification, yet the burden of complying with Plaintiff's interrogatory would force upon loanDepot the arduous task of complying with class-based discovery obligations before the Court has even certified a class (which loanDepot maintains should not occur).

While Plaintiff seeks to represent two different classes as defined in the Complaint, only a tiny sliver of those class members would have valid claims. This is true because loanDepot only makes calls to consumers for marketing purposes with express consent as a matter of policy. So, identifying every individual who may have received a call would not permit Plaintiff to certify the case or represent those class members who consented to receive calls.

Further it is black letter law that a Plaintiff does not need to identify class members in order to certify a class. Hence any effort to determine the identity of class members pre-certification is a fool's errand. Moreover, since there is an extremely high chance that the Plaintiff's present classes will not be certified—they are, after all, uncertifiable facially—the personal identifying information Plaintiff seeks will belong—to a vast degree—to individuals who were never members of the certified class because they consented to receive the messages at issue. So, Plaintiff's counsel impermissibly seeks to invade the privacy of individuals who have no valid TCPA claims and who will never be parties to this suit by serving a thoughtlessly overbroad demand. Hence the demand is inconsistent with the mandates of Rule 26's proportionality requirements as it imposes a burden that far exceeds the needs of this case.

The attendant cost of reviewing the records Plaintiff currently demands, and the cost of preparing the compilation that inevitably stems from that review, is enormous.

Accordingly, the costs associated with complying with Plaintiff's staggeringly overbroad interrogatory are absolutely not proportional to needs of this case at this stage since identifying

class members is not necessary pre-certification and the class definition will be challenged by loanDepot, therefore, submits that the proper course is for the Court to rule on certification before loanDepot is forced to undertake the overbroad and burdensome data review demanded by Plaintiff – a review which may or may not be necessary given the uncertain status of the class and claims for which Plaintiff seeks to represent and assert.

On the basis of these objections, loanDepot declines to respond to this interrogatory.


**INTERROGATORY NO 8:** If you contend that a third party made the calls alleged in the complaint, identify that third party and state all facts in support of the same.

**RESPONSE:** loanDepot responds that it did not make such a contention.


**INTERROGATORY NO 9:** Identify all communications you've had with any third party, other than your counsel, regarding this lawsuit.

**RESPONSE:** Objection, this interrogatory is overly broad and imposes an undue burden on loanDepot.

This interrogatory is overly broad because it seeks "all communications" with *any* third party through any medium whatsoever. And although the communications Plaintiff seeks are communications "regarding this lawsuit," this topic is still wildly overly broad and not all communications regarding this lawsuit are relevant.

This interrogatory would also impose an undue burden on loanDepot. In order to respond to this request, loanDepot would have to search each one of its employees for *any* internal and external communications with *any* third party, other than its counsel, regarding this lawsuit. Such

a search could take hundreds of hours when again, not all communications would be relevant. Only communications regarding the calls at issue or even the Plaintiff may be relevant to this case.

On the basis of these objections, loanDepot declines to respond to this request.

**INTERROGATORY NO 10:** Identify by make, model, structure and location the system(s), platform(s), and/or equipment used by you, or any vendor, used to contact the Plaintiff.

**RESPONSE:** Objection, this interrogatory is not a single request—as the code requires—but a sprawling series of requests each of which separately violate the rules.

This interrogatory also assumes facts that loanDepot's vendors contacted Plaintiff. Plaintiff alleges he received calls from loanDepot. Therefore, the only entity at issue here is loanDepot.

Moreover, this interrogatory seeks information outside the scope of discovery in this case because the systems, platforms, and/or equipment used by loanDepot, or any vendor are not relevant to this case. This is not an ATDS case. So, the "system" and "platform" used in connection with the calls at issue is not at issue in this case. This case will deal with issues regarding consent and whether Plaintiff consented and revoked consent to the calls at issue.

Moreover, loanDepot objects to the extent this interrogatory seeks information that is confidential and proprietary business information.

To the extent Plaintiff seeks information regarding any vendor's systems used to contact Plaintiff, loanDepot objects as the request seeks information not in its control or possession and calls upon it to speculate related to the system that the third-party placing the call to Plaintiff might have used.

This interrogatory is overly broad as to the term "you." As specially defined by Plaintiff,

"you" includes loanDepot and "without limitation, any of its past or present offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, partners, joint venturers, officers, directors, employees, agents, attorneys or representatives." Therefore, in order to respond to this interrogatory, loanDepot would need to determine whether any of its officers, directors, employees, or agents contacted Plaintiff and obtain information surrounding the systems and platforms used to contact Plaintiff. However, rather obviously, such systems used by other entities would not be relevant to this case.

This interrogatory is vague and ambiguous as to the terms "system," "platform," and "equipment." These terms are not defined terms by Plaintiff, therefore loanDepot cannot conceive of its meaning.

Notwithstanding the foregoing objections, loanDepot responds it used Genesys Cloud (formerly PureCloud, formerly PureConnect) to contact Plaintiff.

**INTERROGATORY NO 11:** Identify any person (whether employed by you or not) whom you have disciplined, reprimanded, or taken similar action against for allowing or making allegedly unlawful or unauthorized outbound calls. In your answer, please identify all persons involved in any investigation, describe the reasons for your disciplinary action or reprimand, and describe the action taken against the person.

**RESPONSE:** Objection, this interrogatory is not a single request—as the code requires—but a sprawling series of requests, each of which separately inappropriate and violate the Rules.

First, this interrogatory seeks the names of any person (whether employed by loanDepot or not), who may have been disciplined for allowing or making allegedly unlawful or unauthorized outbound calls. This request is vague because it is unclear what "discipline" means

15

in Plaintiff's mind. Moreover, this request is excessively burdensome as phrased. Requiring loanDepot to search for the identification of any individual to ever have been disciplined would require at least dozens of hours—not because there are numerous individuals—but because every business unit would have to be consulted to even find such names. The needs of this case do not justify this search because the names of the individuals who may or may not have been disciplined does not have any conceivable relevance to the case. And the burden on loanDepot to then produce the names (if any) of unrelated third parties, is excessive given the needs of the case. Further, if such names were found and provided, such information would threaten the privacy of those individuals unrelated to this case.

Moreover, this interrogatory is vague because it is unclear what "allowing" or "making" means in Plaintiff's mind and loanDepot cannot conceive of its meaning without speculation.

Second, this interrogatory seeks the names of any person (whether employed by loanDepot or not), whom have been reprimanded for allowing or making allegedly unlawful or unauthorized outbound calls to occur. This request is vague because it is unclear what "reprimand" means in Plaintiff's mind. To the extent it means the same thing as "discipline," this request is duplicative. To the extent it means something other than "discipline," loanDepot cannot conceive of its meaning.

Moreover, this interrogatory is excessively burdensome as phrased. Requiring loanDepot to search for the identification of any individual to ever have been reprimanded would require at least dozens of hours—not because there are numerous individuals—but because every business unit would have to be consulted to even find such names. The needs of this case do not justify this search because the names of the individuals who may or may not have been reprimanded does not have any conceivable relevance to the case. And the burden on loanDepot to then

produce the names (if any) of unrelated third parties, is excessive given the needs of the case. Further, if such names were found and provided, such information would threaten the privacy of those individuals unrelated to this case.

Next, the interrogatory goes even further and states to then "describe the reasons for your disciplinary action or reprimand, and describe the action taken against the person." Again, this request is excessively burdensome as phrased. Even if such names were found—and there might not be any—to then describe the reasons and action taken against the person would require at least dozens of hours because such information may not be readily available. Moreover, this interrogatory improperly assumes that any such action was taken against a person. Additionally, to describe the reasons and actions (if any) taken against a person, would also threaten the privacy of individuals unrelated to this case.

Additionally, such a response would violate the privacy rights and confidentiality of loanDepot's employee file.

On the basis of these objections, loanDepot declines to respond to this interrogatory.

Dated: August 21, 2024

TROUTMAN AMIN, LLP

By: */s/Brittany A. Andres*
    Eric J. Troutman
    Brittany A. Andres

*Attorneys for Defendant loanDepot.com, LLC*

17

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2024, I electronically sent the foregoing to counsel of

record for the Plaintiff.


/s/ *Brittany A. Andres*
Brittany A. Andres

**VERIFICATION UNDER 28 U.S.C.S. § 1746**

My name is Rod Halperin. I am a Vice President of loanDepot.com, LLC that is the Defendant in the above-styled lawsuit. I have provided the answers and reviewed the objections to the foregoing interrogatory.


I declare under penalty of perjury that the foregoing answers are true and correct to the best of my knowledge, except insofar as objections and statements from counsel as noted.


Executed on:  Aug 21, 2024

*Rod Halperin*
_____

**Signature**

# LD R to ROGG1 (8.21.2024)

Final Audit Report                                                         2024-08-21

| | |
|---|---|
| Created: | 2024-08-21 |
| By: | Randi Enison (renison@loandepot.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA1zaiTXF-cEOdkN3FJCFPFOv6YYtI5B7O |

## "LD R to ROGG1 (8.21.2024)" History

Document created by Randi Enison (renison@loandepot.com)
2024-08-21 - 8:43:41 PM GMT- IP address: 136.226.122.185

Document emailed to Rod Halperin (RHalperin@loandepot.com) for signature
2024-08-21 - 8:45:10 PM GMT

Email viewed by Rod Halperin (RHalperin@loandepot.com)
2024-08-21 - 8:45:55 PM GMT- IP address: 104.47.57.126

Document e-signed by Rod Halperin (RHalperin@loandepot.com)
Signature Date: 2024-08-21 - 8:46:29 PM GMT - Time Source: server- IP address: 136.226.66.244

Agreement completed.
2024-08-21 - 8:46:29 PM GMT

**Adobe Acrobat Sign**

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

**ROBERT HUBBLE,** *on behalf of himself*            Case No. 1:24-CV-11173-TLL-PTM
*and all others similarly situated,*

     *Plaintiff,*

v.

**LOANDEPOT.COM, LLC,**

    *Defendant.*

_____/


### DEFENDANT LOANDEPOT.COM, LLC'S RESPONSES TO PLAINTIFF ROBERT HUBBLE'S REQEUST FOR PRODUCTION OF DOCUMENTS, SET ONE

COMES NOW, Defendant, loanDepot.com, LLC, ("loanDepot") submits the following Responses to Plaintiff Robert Hubble's Production of Documents Requests, Set One:

### PRELIMINARY STATEMENT

These Responses are made solely for the purpose of this action. Each Response is subject to all appropriate objections which would require the exclusion of any statement contained herein if the Request were asked or if the answer were made by a witness present and testifying in Court. All objections and grounds are reserved and may be interposed at the time of Trial.

The responding party has not yet completed its investigation of the facts relating to this action, its discovery in this action, or its preparation for Trial of this action. Consequently, these Responses are given without prejudice to the right of any responding party to produce at the time of Trial any and all subsequently discovered evidence relating to the proof of presently known material facts, and to proof of subsequently discovered material facts.

Except for explicit facts admitted herein, no admissions of any nature whatsoever are implied or should be inferred. The fact that any Request herein has been answered should not be taken as an admission or acceptance of the existence of any fact or facts set forth or assumed by

1

such Request, or that such answer constitutes admissible evidence.

It is assumed by the responding party that the propounding party and all parties to this lawsuit possess and are familiar with all discovery proceedings in this action. Therefore, when a Request calls for information which is contained in the discovery materials available to all parties, said Request will be answered only by reference to those discovery materials. The preliminary statement is incorporated herein by reference to <u>each</u> of the Responses as if stated in full.

## **<u>GENERAL OBJECTIONS</u>**

loanDepot answers Plaintiff's request for production of documents subject to the following General Objections. These objections form a part of loanDepot's answer to each request and are set forth here to avoid their repetition. The General Objections may also be separately stated in loanDepot's answers to individual requests for emphasis and clarity. And a lack of a specific reference should not be construed as a waiver of any General Objection.

The answers set forth below are based upon loanDepot's interpretation of the language used in the requests, and loanDepot reserves its right to amend or supplement its answers if Plaintiff asserts an interpretation that differs from that of loanDepot's.

The answers and objections are based on loanDepot's present knowledge, information, and belief. loanDepot reserves the right to amend, revise, supplement, correct or clarify any answer or objection.

loanDepot objects to the requests to the extent they purport to impose requirements, obligations, and duties beyond those prescribed by the Federal Rules of Civil Procedure or Local Rules.

## DOCUMENT REQUESTS

**DOCUMENT REQUEST NO 1:** Please produce all non-attorney-client-privileged documents identified in or used to research or draft responses to interrogatories in this case.

**RESPONSE:** Objection, this Request does not set forth a single reasonably particularized category of documents to be produced. The Request—although masquerading as a single Request—is actually three separate requests: all documents identified in interrogatories, all documents used to research interrogatories in this case and all documents of draft responses to interrogatories in this case.

While the Request seems to limit the demand by excluding attorney-client privileged documents, it is still problematic. The research and draft responses are privileged information which may include mental impressions of attorney-client communications. Simply adding this exclusion to the Request does not dissolve the protection afforded to every litigant.

Even focusing on non-privileged records, however, the burden attendant of the search Plaintiff demands is excessive. This request is unlimited in scope in that it includes all research, drafts, notes, investigation, or mental impressions used in response to Plaintiff's interrogatories. The demand imposes an extreme burden to the extent it purports to require loanDepot to search the records of each and every employee for any scrap of paper or electronic record that could have been used to respond in this case.

On the basis of these objections, loanDepot declines to respond to this request.

**DOCUMENT REQUEST NO 2:** Please produce all documents supporting or contradicting any affirmative defense made in any answer by you to any complaint in this case.

**RESPONSE:** Objection, this demand is vague and does not set forth a single reasonably particularized category of documents to be produced. The Request—although masquerading as a single Request—is actually two separate demands, both of which fail to set forth a reasonably particularized category of documents and both of which seek to impose a massive and inappropriate burden on loanDepot.

To the extent the demand seeks records supporting every defense applicable to every class member, the demand is wildly over broad and imposes a complete undue burden. Searching the highly individualized issues impacting the legality of each call to each individual class member, analyzing every file of every individual that received calls from or on behalf of a third-party for the benefit of loanDepot to determine every applicable fact supporting every defense respecting that individual, would take hundreds of hours, or more. The fact that so many disparate records need to be reviewed and assessed in order to determine the merits of the claims of class members underscores, however, why a class in this case can never be certified.

Moreover, the demand is overly broad because the class, as plead, in the complaint may yet be narrowed prior to the certification stage in the complaint and there is no basis to compel production of wide-ranging documents regarding defenses applicable to non-class members. Indeed, such a production would violate the privacy rights of these parties respecting confidential financial matters.

Indeed, as phrased this Request is broad enough to seek a record of communication between loanDepot's lawyers, in addition to core attorney-client communications. This information is absolutely not admissible and is outside the scope of discovery. *See* Rule 26(b)(1) (discovery permitted on nonprivileged matters only)).

The demand also plainly seeks attorney work product mental impressions—i.e., the opinion of loanDepot's counsel as to whether or not a record does or does not support a defense. Hence, the records it seeks are outside the scope of discovery.

On the basis of these objections, loanDepot declines to respond to this request.

**DOCUMENT REQUEST NO 3:** Please produce all documents related to Plaintiff, including, but not limited to, all documents evidencing your relationship with Plaintiff or your investigation into outbound calls made to Plaintiff.

**RESPONSE:** Objection, this demand does not set forth a reasonably particularized category of documents to be produced.

Further, it is vague and ambiguous as it might be read to include a demand for privileged records—such as loanDepot's outside counsel's entire litigation file for this case, or the records of communication between loanDepot's General Counsel and outside counsel, or the records of communication between loanDepot's inhouse Counsel and its executives. As knowingly seeking privileged records is unethical and inappropriate conduct, however, loanDepot will presume Plaintiff seeks solely business records regarding Plaintiff.

Even focusing on non-privileged records, however, the burden attendant of the email search Plaintiff demands is excessive given the limited needs of this case. This request is unlimited in scope in that it includes everything remotely related to the named Plaintiff. The demand imposes an extreme burden to the extent it purports to require loanDepot to search the records of each and every employee for any scrap of paper or electronic record that might make mention of the Plaintiff. Such a search might take thousands of hours, yet only those business records that deal

with consent or outbound calls are conceivably relevant to the case. So, the proportionality requirements of Rule 26 are exceeded.

Moreover, this request is vague and ambiguous as to the terms "relationship" and "investigation."

On the basis of these objections, loanDepot agrees to produce all business records within its possession related to Plaintiff.

**DOCUMENT REQUEST NO 4:** Please produce all documents relating to any failure by a vendor of yours to abide by your policies or any agreement you had relating to the sending of outbound calls.

**RESPONSE:** Objection. This request incorrectly assumes there was any such failure by any vendor to abide by loanDepot's policies or procedures in the first place.

This request is also vague and ambiguous as it might be read to include a demand for privileged records—such as loanDepot's outside counsel's entire litigation file for this case, or the records of communication between loanDepot's General Counsel and outside counsel, or the records of communication between loanDepot's inhouse Counsel and its executives. As knowingly seeking privileged records is unethical and inappropriate conduct, however, loanDepot will presume Plaintiff seeks solely business records.

This demand is also vague on account of its use of the undefined term of "failure," and loanDepot would be required to make a speculation as to what constitutes a "failure."

Even focusing on non-privileged records, however, the burden attendant of the search Plaintiff demands is excessive given the limited needs of this case. This request imposes an extreme burden to the extent it purports to require loanDepot to search across all its databases and

its records for any failure related to any outbound call ever made from an unspecified time to the present. As such, this request is overly broad as to the timeframe contemplated.

This request is overly broad in that it seeks all records relating to any form of policy violation connected with the sending of outbound calls—not just those at issue in the case. The demand is also overly broad because it seeks "all documents relating" to an event, instead of a specific and reasonably particularized category of documents as the rules require.

Even as to documents related to the scope of the case, the demand is unduly burdensome because loanDepot would first have to identify if any such failure existed. Then, loanDepot would have to have each one of its employees search for any records that may "relate to" such failure. Such a task could take hundreds of hours and the needs of this case do not justify the search. Moreover, the demand is not limited to records in the possession of loanDepot, so it calls on loanDepot to speculate as to what records may exist in the possession of any vendor and improperly purports to require it to produce records outside of its possession or control.

Moreover, records related to conduct of vendors or employees that did not involve class members is outside the scope of discovery in this suit and unrelated to the subject matter of the action. Given the great burden associated with the demanded search and, production, loanDepot objects that the request seeks to impose a burden that is disproportionate to the need for the records in this case.

On the basis of these objections, loanDepot declines to respond to this request.

**DOCUMENT REQUEST NO 5:** Please produce all complaints or do-not-call requests concerning outbound calls made by you or by any vendor of yours for allowing or making allegedly unlawful or unauthorized outbound calls. This request, but is not limited to, any written complaints

(litigation or pre-litigation) received by you, any response sent, and any internal correspondence about the same.

**RESPONSE:** Objection, this request does not set forth a single reasonably particularized category of documents as the rules require. Instead, it sets forth nearly a dozen, wide-ranging and misshapen requests, each of which imposes an undue burden upon loanDepot given the limited needs of this case.

First, the demand requires loanDepot to produce, and is not limited to, "all complaints . . . and any internal correspondence about the same." The demand is not limited to the complaints themselves, but to "any internal correspondence" related to such complaints, meaning that loanDepot would be required to first: i) locate all potentially responsive complaints (if any); and then ii) prepare a search protocol to find every correspondence in the possession of any of its employee that might in anyway "relate" to such a complaint. Given that the phrase "internal correspondence" is not defined, it is thus vague and ambiguous and calls or loanDepot to speculate as to its meaning. This formless demand would require thousands of hours of work by loanDepot just to search for the "complaints" Plaintiff seeks across all of the potential channels Plaintiff identifies. Then, loanDepot would need to spend thousands of additional hours fashioning a hunt and peck effort to find records that might be considered "correspondence" to any such complaint it finds.

Not only is the demand overly broad in terms of sources of "complaints," it is also thoughtlessly and excessively broad in terms of the type of complaints sought. The demand focuses on complaints related to loanDepot's outbound calls—not the just outbound calls related to this case. In the given time period here, there will be a massive number of calls to analyze to determine whether or not there was a "complaint." Although Plaintiff attempts to limit the request by

qualifying the outbound calls as "unlawful or unauthorized," this only requires loanDepot to first search every outbound call and then refine that search to these terms. This does not decrease the burden on loanDepot and will require hundreds of hours to accomplish.

The receipt of complaints—even those related to the issues in this case—is not proof of any issue relevant to this matter. The TCPA is a strict liability statute. Either loanDepot violated the statute, or it did not. And Plaintiff cannot prove claims using un-litigated hearsay complaints of third parties. Notably, Plaintiff does not limit his demand to complaints by class members so he is seeking statements by third parties that will have no bearing on the outcome of this action. For this reason, too, therefore, the demand imposes an undue burden and fails the proportionality requirements of Rule 26.

But that is just the first portion of the demand. Next, Plaintiff seeks "all do-not-call requests. . . and any internal correspondence about the same." Once again, the requirement that loanDepot find not just the do-not-call requests but all internal correspondence regarding do-not-call requests is overly broad and imposes a massive and improper burden. Fashioning a search for all possible responsive records would take thousands of hours. And records regarding an undefined "internal correspondence" related to do not call requests is simply unnecessary given the needs of this case. Moreover, only certain do not call requests are at issue in this case—those that were followed by additional calls. Yet, Plaintiff seeks records of all do not call requests—including, necessarily— those made by non-class members. Obviously, the production of records related to the private financial matters of third parties who will never be class members is inappropriate and risks consumer privacy needlessly. Finally, the request is vague because it is unclear what constitutes a "do not call request" in Plaintiff's mind. To the extent the Request seeks records other

than "do not call" entries in loanDepot's system of record, therefore, the Request is indeterminably vague.

Third, this request is overly broad because it is not even limited to complaints and do not call requests of loanDepot itself. Rather, this request seeks records of all complaints and do not call requests even of any vendor of loanDepot. Thus, this request literally requires loanDepot to speculate as to who else might have complaints and do not call requests and then attempt to locate and produce such records. This portion of the request could take thousands of hours and is likely an impossible task to complete. And this request improperly states that loanDepot allows its vendors or makes allegedly unlawful or unauthorized outbound calls.

Fourth, this request is massively overbroad and imposes an undue burden on loanDepot. Even after it spends hundreds of hours searching for "complaints" and "do not call requests," then this request requires loanDepot to search for "any response sent, and any internal correspondence about the same." This request alone would take an additional hundreds of hours because loanDepot would have to conduct a file-by-file search on each complaint and search across its numerous employees and communication channels to determine whether any response was sent or internal correspondence was made regarding such complaint.

This request is also vague and ambiguous as it might be read to include a demand for privileged records—such as loanDepot's outside counsel's entire litigation file for this case, or the records of communication between loanDepot's General Counsel and outside counsel, or the records of communication between loanDepot's inhouse Counsel and its executives. As knowingly seeking privileged records in unethical and inappropriate conduct, however, loanDepot will presume Plaintiff seeks solely business records.

Lastly, to the extent Plaintiff is interested in publicly filed cases, the burden associated with the production is undue as that information is equally available to both sides.

On the basis of these objections, loanDepot declines to respond to this request.

**DOCUMENT REQUEST NO 6:** All contracts or documents representing agreements with any vendor that provided you with the Plaintiff's telephone number or information.

**RESPONSE:** Objection, this request does not set forth a single reasonably particularized category of documents as the rules require. Instead, it is at least two requests each of which separately violate the rules.

 In order to respond to this request, loanDepot would first have to determine who provided it with Plaintiff's telephone number or information. Then, loanDepot would have to search for any contract with such entity(ies). However, this request assumes, without proper basis, that loanDepot has such a contract(s). Moreover, loanDepot would have to search for all documents representing agreements with such vendor(s). But this is obviously an overly burdensome demand because loanDepot would have to search its numerous employees and various communication channels to determine whether there is any other record of an agreement. Such a task could take hundreds of hours.

Further, loanDepot objects to the extent this interrogatory seeks information that is confidential and proprietary business information.

Moreover, the term "information" is vague and ambiguous and calls loanDepot to speculate as to its meaning.

On the basis of these objections, loanDepot declines to respond to this request.

**DOCUMENT REQUEST NO 7:** All internal communications at your company regarding any vendor that provided you with the Plaintiff's telephone number or information.

**RESPONSE:** Objection, this request is not a reasonably particularized category of documents to be produced. Instead, it is a request for all internal communications with a single/multiple entity(ies). For this reason, this request is also overly broad.

Moreover, this request imposes an undue burden on loanDepot. In order to respond to this request, loanDepot would first need to determine what vendor (if any) provided it with Plaintiff's telephone number or information. If Plaintiff's telephone number came from multiple sources, then it would need to catalogue every such entity. Then, once loanDepot is able to identify all such entities, this request requires loanDepot to identify *all* internal communications with such vendors. Such a task could take hundreds of hours as loanDepot's numerous employees would need to be searched and the various communication channels to be searched to be able to find such communications. This is especially true as this demand is not limited to a specific subject matter. Therefore, any and all internal communications regarding any subject matter whatsoever with such entity(ies) would be responsive to this request. Then, loanDepot would need to produce such communications *en masse*. Notably, the needs of the case do not justify the search. So, the proportionality requirements of Rule 26 are exceeded.

Moreover, the demand is overly broad as it seeks potentially privileged material like records of communication between loanDepot's inhouse Counsel and its executives. As knowingly seeking privileged records in unethical and inappropriate conduct, however, loanDepot will presume Plaintiff seeks only non-privileged communications.

Further, the term "information" is vague and ambiguous.

On the basis of these objections, loanDepot declines to respond to this request.

**DOCUMENT REQUEST NO 8:** All contracts or documents representing agreements with any third party that dialed the calls to the Plaintiff.

**RESPONSE:** Objection, this request is massively overbroad and imposes an undue burden on loanDepot. In the first place, this request literally requires loanDepot to produce records that are not in its possession or control. The request is not limited, for instance, to contracts with loanDepot. Thus, it literally requires loanDepot to speculate as to who else might have been calling Plaintiff and then attempt to locate and produce contracts or documents of agreements with unrelated third parties related to those calls. It is unclear how long and burdensome such a search might be since loanDepot cannot conceive of how it would know what other parties might be calling Plaintiff if it did not direct those calls itself.

Moreover, this request attempts to seek information irrelevant to the legal or factual issues present in this lawsuit. Plaintiff alleges that loanDepot made the calls to Plaintiff. Therefore, there is no other third party that dialed the calls to the Plaintiff at issue in this case.

loanDepot further objects to this request because it presumes without proper basis that loanDepot had any such contract. Importantly, this request is not limited to entities authorized by loanDepot—if any—to call the Plaintiff. To the extent loanDepot contracted with any entity that communicated with Plaintiff unrelated to loanDepot's services, the demand is overly broad and seeks information outside the scope of discovery.

To the extent this demand seeks records related to vendors that called Plaintiff on loanDepot's behalf, loanDepot responds that no such records are ever believed to have existed.

**DOCUMENT REQUEST NO 9:** All communications with any third party that dialed the calls to the Plaintiff.

**RESPONSE:** Objection, this request is massively overbroad and imposes an undue burden on loanDepot. In the first place, this request literally requires loanDepot to produce communications that are not in its possession or control. The request is not limited, for instance, to communications between loanDepot and a third party. Thus, this request literally requires loanDepot to speculate as to who else might have been calling Plaintiff and then attempt to locate and produce communications with unrelated third parties. It is unclear how long and burdensome such a search might be since loanDepot cannot conceive of how it would know what other parties might be dialing Plaintiff if it did not direct those calls itself.

Moreover, this request attempts to seek information irrelevant to the legal or factual issues present in this lawsuit. Plaintiff alleges that loanDepot made the calls to Plaintiff. Therefore, there is no other third party that "dialed" the calls to the Plaintiff at issue in this case.

On the basis of these objections, loanDepot declines to respond to this request.


**DOCUMENT REQUEST NO 10:** All internal communications at your company regarding any third party that dialed the calls to the Plaintiff.

**RESPONSE:** Objection, this request is unintelligible as phrased. It is unclear what Plaintiff means when he says "dialed the calls to the Plaintiff."

This request is also overly broad and imposes an undue burden on loanDepot. It is overly broad because the request seeks "*all* internal communications" regarding *any* third party. Yet not every such communication regarding a third party will be relevant to this case.

But the work needed to locate such communications would impose a massive burden on loanDepot. In order to respond to this request, loanDepot would need to identify any third parties that "dialed calls to the Plaintiff." This task alone could take numerous hours because, as stated above, it would require loanDepot to speculate as to what third parties have dialed Plaintiff. Second, loanDepot would then have to search across its numerous employees and various communication channels for *any* internal communication regarding that third party. This additional task could take hundreds of hours and is likely an impossible task to complete.

On the basis of these objections, loanDepot declines to respond to this request.

**DOCUMENT REQUEST NO 11:** All communications regarding any lead generation or customer acquisition services you perform by permitting third parties to make telemarketing calls.

**RESPONSE:** Objection, this request does not seek a reasonably particularized category of documents. Instead, this request is at least two requests, each of which separately violate the rules.

Moreover, this request is also vague and ambiguous as it might be read to include a demand for privileged records—such as loanDepot's outside counsel's entire litigation file for this case, or the records of communication between loanDepot's General Counsel and outside counsel, or the records of communication between loanDepot's inhouse Counsel and its executives. As knowingly seeking privileged records is unethical and inappropriate conduct, however, loanDepot will presume Plaintiff seeks solely business records.

As an initial matter, this request is massively overbroad. As phrased, this request seeks "all communications regarding any lead generation or customer acquisition services…" no matter the source and no matter who the communications are between. So, this request demands a massive amount of communications when not all such communications are even relevant to this case.

Indeed, this request requires loanDepot to speculate what communications may be in the possession of other third parties and improperly require it to produce such records.

Even if this request were limited to communications in loanDepot's possession (it is not), the request is still overbroad. First, this request seeks "[a]ll communications regarding any lead generation…services you perform by permitting third parties to make telemarketing calls." But this request presumes, without proper basis, that loanDepot permits third parties to make telemarketing calls. Moreover, this request seeks information outside the scope of discovery in this case. Plaintiff alleges loanDepot made the calls at issue. Therefore, it is unclear how any communications regarding other third parties would be relevant to this case.

This request also imposes an undue burden on loanDepot. loanDepot would have to search its hundreds of employees for any communications regarding lead generation services it performs. But the term "lead generation" is already overbroad. So a huge number of communications would potentially fall within the scope. Such a task could take hundreds of hours and is likely an impossible task to complete.

Second, this request seeks "[a]ll communications regarding… customer acquisition services you perform by permitting third parties to make telemarketing calls." But again, this request presumes, without proper basis, that loanDepot permits third parties to make telemarketing calls. Moreover, this request seeks information outside the scope of discovery in this case. Plaintiff alleges loanDepot made the calls at issue. Therefore, it is unclear how any communications regarding other third parties would be relevant to this case.

This request also imposes an undue burden on loanDepot. loanDepot would have to search its hundreds of employees for any communications regarding customer acquisition services it performs. But the term "customer acquisition" is already overbroad. So a huge number of

communications would potentially fall within the scope. Such a task could take hundreds of hours and is likely an impossible task to complete.

On the basis of these objections, loanDepot declines to respond to this request.

**DOCUMENT REQUEST NO 12:** Please produce all documents relating to insurance coverage of the acts alleged by Plaintiff, including, but not limited to, all potentially applicable policies issued by any insurer and all communications with any such insurers, including, but not limited to, reservation-of-rights letters, regardless of whether or not such coverage purports to exclude the acts alleged in this matter and regardless of whether or not such insurers have declined coverage in this matter.

**RESPONSE:** Objection, this request is not a reasonably particularized category of documents to be produced. Instead, it is several requests, each of which is separately inappropriate and violates the Rules.

This demand is also overbroad and unduly burdensome. Having to find all documents in loanDepot's possession that even remotely relate to insurance coverage is a timely and impermissible request. It would require a search of every employee, piece of paper, file, email, and such in order to ensure compliance. Certainly, this information will not lead to any evidence that it is more or less likely a violation of the TCPA occurred. And as such, this request is not proportional to the needs of the case.

Next, the Request seeks all documents relating to insurance coverage regardless of whether or not such coverage purports to exclude the acts alleged in this matter by Plaintiff and regardless of whether or not such insurers have declined coverage in this matter. This plainly seeks records

outside the scope of discovery in this action and imposes a burden on loanDepot far in excess of the needs of this case.

On the basis of these objections, loanDepot declines to respond to this request.

**DOCUMENT REQUEST NO 13:** Please produce all indemnification agreements under which a third party may be responsible for satisfying all or part of a judgment that may be entered against you in this action, and all communications with those third parties.

**RESPONSE:** Objection, this request is not a reasonably particularized single category of documents to be produced as the rules require. Instead, this is two requests, each of which is separately inappropriate and violated the Rules.

This request presumes without proper basis that loanDepot had any such agreements. Moreover, the records are confidential and proprietary business records.

To the extent the request seeks for "all communications with those third parties," the request is overly broad. This request is further vague and overbroad as to scope because it does not specify the subject matter regarding those communications. As phrased, the request seeks every single communication with a third party regarding any subject matter at any time by any means.

The burden of the search Plaintiff demands is excessive given the limited needs of this case. This request imposes an extreme burden to the extent it purports to require loanDepot to search across all its databases and its records for any reference to a third party that it has indemnification agreements with. Such a search might take thousands of hours, yet only those communications with the Plaintiff are conceivably relevant to the case. So, the proportionality requirements of Rule 26 are exceeded.

On the basis of these objections, loanDepot declines to respond to this request.

**DOCUMENT REQUEST NO 14:** Please produce all documents related to policies for compliance with the TCPA or the FCC's regulations thereunder and all documents necessary to construct a timeline of when each policy was in force. This request specifically includes, but is not limited to, policies related to the following:

> a)   compliance with the TCPA, including, but not limited to the rules, regulations, opinions, advisories, comments or filings of the Federal Communications Commission that relate to the TCPA or 47 C.F.R. § 64.1200;
>
> b)   obtaining or verifying prior express consent;
>
> c)   complying with E-SIGN Act, 15 U.S.C. §§ 7001 *et seq.*

**RESPONSE:** Objection, this request is not a reasonably particularized single category of documents to be produced as the rules require. Instead, it is several requests, each of which is separately inappropriate and violates the Rules.

First, the request seeks "all documents related to policies" which also is not a reasonably particularized category of documents to be produced, but a shapeless and overly broad demand seemingly seeking every communication, note, or record ever made by any employee regarding any responsive policy. Attempting to search for and produce all such records would take many thousands of hours as there are simply no contours to the request and no limit to the number of potential custodians.

Next, the demand seeks "all documents necessary to construct a timeline…" Here, the demand plainly does not set forth a reasonably particularized category of documents to be produced. There is no way for loanDepot to know what Plaintiff considers "necessary" to create a timeline. And the rules do not require loanDepot to create any records in responding to a document

demand. Indeed, Plaintiff seems to plainly be misusing the Request for Production device—which is not limited in terms of the number of demands that may be served—as a substitute for an interrogatory—which are limited in number. But this is plainly an abuse of the discovery process and an end run around the applicable rules.

Even if the demand were properly limited to seek just the policies and procedures—as opposed to shapeless set of documents "related" to them—the Demand would still be overly broad and impose an undue burden. Not every policy related to the TCPA is at issue in this case. Only a small sliver of conduct is challenged here—calls using a prerecorded voice message. To the extent the demand seeks information beyond the contours of the pleaded claims, it seeks information outside of the scope of discovery in excess of the proportionality mandates of Rule 26.

Further, policies are not relevant at all because a TCPA violation is a strict liability offense. Either loanDepot violated the law, or it did not. So, its policies have nothing to do with the case. Not only is the scope of records sought remarkably inappropriate, so too, is the "category" of records requested. The category is "all documents" which means loanDepot would have to conduct a search of every scrap of paper and data element in the possession of any of its thousands of employees that might conceivably pertain to the subject matter of the request. loanDepot conservatively estimates that the search required to locate such records would take hundreds of hours. Yet, there is no need for any of these materials in connection with this case.

As previously described, the TCPA is a strict liability statute, so the contents of documents pertaining to the efforts to make calls, obtain consent, or honor revocation are not relevant to the action. Even if they were, only that tiny sliver of operative records (i.e., formal policies) pertaining to outbound, prerecorded calls would have any conceivable relevance. Given the lack of any need for the demanded information on the one hand, the extraordinarily broad and thoughtless scope of

the demand and the extreme burden in responding, on the other, counsel has plainly violated Rule 26(g) in asserting and serving this request.

Finally, the demand—as phrased—is broad enough to include any communication of advice given by any loanDepot legal staff member to any employee regarding these topics (and may be broad enough to include outside counsel's records.) As knowingly seeking privileged materials is unethical and inappropriate, loanDepot assumes this vague demand seeks only business records and will reply accordingly.

On the basis of these objections, loanDepot declines to respond to this request.

**DOCUMENT REQUEST NO 15:** Please produce all documents containing any of the following information for each outbound telemarketing call sent by you or your vendors on any lead generation or customer acquisition campaigns, including, but not limited, to the campaign that contacted the Plaintiff. This includes, but is not limited to, the following information:

- the date and time;

- the caller ID;

- any recorded message used;

- the result;

- identifying information for the recipient; and

- any other information stored by the call detail records.

**RESPONSE:** Objection, this request is not a reasonably particularized single category of documents to be produced as the rules require. Instead, it is several requests, each of which is separately inappropriate and violates the Rules.

First, the demand seeks "all documents containing" any of the following of innumerable categories of information. Obviously, this is not a single reasonably particularized category of documents to be produced as the rules require. Rather, it is a demand for a shapeless mass of records "containing" any one of over a half dozen data points. Attempting to fashion a search for such a broad ranging set of information—regarding each of potentially millions of occurrences—would consume a truly monumental amount of time. As phrased, loanDepot would have to fashion a specific search regarding each of numerous data sets related to every single call that it made—directly or indirectly—over a multiyear span. It is impossible to know for sure how long such a search would take, but without question it would consume hundreds of thousands of hours.

Further, there is no conceivable relevance to much of the demanded information. As the demand is not limited to calls made to class members, none of the data sought is relevant to the case with respect to information on calls to non-class members. So, Plaintiff demands a huge amount of sensitive data for people who are not—and never will be—parties to this suit. In so doing, he needlessly risks the privacy of thousands of individuals while, ironically, claiming a violation of his own privacy.

Even as to data sets related to potential class members, the demand is overly broad. The content of prerecorded messages is not at issue in this case so the demand for "any recorded message used" is unnecessary and imposes an undue burden. Similarly, records related to "identifying information for the intended recipient" are unnecessary—particularly at this stage of the case given that the identity of class members need not be determined pre-certification. Similarly, the demand for "other information stored by the call detail records" is plainly just an intrusive fishing expedition untethered to any need and imposing a great and unsustainable burden on loanDepot.

Similarly, the demand for "other information stored by the call detail records" is plainly just an intrusive fishing expedition untethered to any need and imposing a great and unsustainable burden on loanDepot.

Remarkably, the request also does not specify what type of calls it seeks data on—other than "outbound telemarking call(s)." The request, as phrased, seeks data regarding any outbound telemarketing call ever made from over a four-year time period. For this reason, the request is also excessively burdensome.

Additionally, this request seeks call data from vendors that did not even contact Plaintiff nor bear any relationship with Plaintiff. Such call data with unrelated vendors are completely irrelevant to this case. If loanDepot were to produce such records, such production would threaten the privacy of hundreds or thousands of loanDepot customers and inquirers who may have ever received a call from loanDepot or its vendors.

Lastly, loanDepot objects to this demand as to the extent that these documents are not in its possession since this request asks for recorded messages "sent by you or your vendors." Those recorded messages sent by the vendors are likely not going to be in loanDepot's possession.

In the end, it is unclear what documents Plaintiff is even after, given the scope and phrasing of the demand. While loanDepot is willing to discuss what, precisely, Plaintiff is seeking and meet and confer in good faith about a potential production of information that is relevant to this action, it will not produce any records in response to this demand.

On the basis of these objections, loanDepot declines to respond to this request.

**<u>DOCUMENT REQUEST NO 16:</u>** All communications with any third party concerning this litigation other than your attorney.

**RESPONSE:** Objection, this request is extremely overbroad. This request, as phrased, seeks for loanDepot to identify every single communication it had with *any* third party anywhere "concerning this litigation…" and then to produce such communications. For loanDepot to catalogue every such communication with *any* third-party could take hundreds of hours and is likely an impossible task to complete. This is especially true since it is impossible for loanDepot to even recall every communication it had with any individual "concerning this litigation." Obviously, this is an extremely broad and burdensome demand.

Moreover, this interrogatory is vague and ambiguous as to the phrase "concerning this litigation."

On the basis of these objections, loanDepot declines to respond to this request.

Dated: August 21, 2024                    TROUTMAN AMIN, LLP

                                          By: */s/Brittany A. Andres*
                                          Eric J. Troutman
                                          Brittany A. Andres

                                          *Attorneys for Defendant loanDepot.com, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2024, I electronically sent the foregoing to counsel of record for the Plaintiff.

                    */s/ Brittany A. Andres*
                    Brittany A. Andres

# EXHIBIT C

| From: | Anthony Paronich |
|---|---|
| To: | Brittany Andres; Max Morgan |
| Cc: | Eric Troutman |
| Subject: | RE: Hubble v. Loandepot.com, LLC |
| Date: | Thursday, August 22, 2024 5:19:14 AM |
| Attachments: | image003.png |
| | LD R to RPD1.pdf |
| | LD R to ROGG1.pdf |

---

External (anthony@paronichlaw.com)

Report This Email   FAQ   GoDaddy Advanced Email Security, Powered by INKY

Thanks, Brittany. Could we set up a meet and confer to discuss the below:

- For Interrogatory No. 1, we believe we are entitled to know the identities of any individual who provided factual information for the responses.
- We believe we are entitled to a full response to Interrogatory No. 2 and 3, including where the leads came from, what system was used to make the calls and who was involved in their sending.
- With respect to Interrogatory No. 7, we believe production of all leads called with a pre-recorded message from SuperSamples.com is appropriate.
- For Interrogatory No. 9, communications with SuperSamples.com or their counsel are relevant.
- A production for RPD No. 5 is relevant for willfulness and identified class members, especially because the Plaintiff alleges having made a stop request in this case.
- Your client has put consent at issue and as such we believe a complete response to RPD No. 11, which are communications about them, is appropriate.
- I don't really understand the objection to RPD No. 15 that says you'd like to meet and confer but won't produce any documents. We believe that, minimally, the following documents should be produced (a) records of pre-records to SuperSamples leads (b) Records of pre-records sent after a DNC request was made.
- Also, we'd like to confer about your consent defense and the documents you intend to produce on that. As you likely recall, we had a class settlement with Health IQ related to the same website.
- Finally, can we please schedule an October deposition of Rod Halperin and Joseph Mascolo. I'm willing to take that via Zoom.


----

Anthony Paronich

Paronich Law, P.C.

350 Lincoln Street, Suite 2400

Hingham, MA 02043

[o] (617) 485-0018

[c] (508) 221-1510

[f] (508) 318-8100

This email message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

**From:** Brittany Andres <brittany@troutmanamin.com>
**Sent:** Wednesday, August 21, 2024 5:02 PM
**To:** Anthony Paronich <anthony@paronichlaw.com>; Max Morgan <max.morgan@theweitzfirm.com>
**Cc:** Eric Troutman <troutman@troutmanamin.com>
**Subject:** RE: Hubble v. Loandepot.com, LLC

Hi Anthony

Please see attached loanDepot's responses to Plaintiff's first set of discovery.

Production to follow shortly.

**Brittany Andres ("The Baroness")**
*Partner*
400 Spectrum Center, Ste. 1550
Irvine, CA 92618
www.tcpaworld.com
www.cipaworld.com
www.troutmanamin.com
P: (949) 350-5612 (No ATDS)
F: (949) 203-8689



**From:** Anthony Paronich <anthony@paronichlaw.com>
**Sent:** Monday, July 22, 2024 2:56 PM
**To:** Brittany Andres <brittany@troutmanamin.com>; Max Morgan <max.morgan@theweitzfirm.com>
**Cc:** Eric Troutman <troutman@troutmanamin.com>
**Subject:** Hubble v. Loandepot.com, LLC

Hello, all. Our first set of discovery is attached.

----

Anthony Paronich

Paronich Law, P.C.

350 Lincoln Street, Suite 2400

Hingham, MA 02043

[o] (617) 485-0018

[c] (508) 221-1510

[f] (508) 318-8100

This email message may contain legally privileged and/or confidential information.  If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

# EXHIBIT D

| | |
|---|---|
| **From:** | Anthony Paronich |
| **To:** | Brittany Andres; Max Morgan |
| **Cc:** | Eric Troutman |
| **Subject:** | Re: Hubble v. Loandepot.com, LLC |
| **Date:** | Monday, September 23, 2024 12:48:32 PM |
| **Attachments:** | image003.png |

| External (anthony@paronichlaw.com) |
|---|

Report This Email   FAQ   GoDaddy Advanced Email Security, Powered by INKY

Thanks for chatting with me today, my notes are below, we'll circle back in a few weeks.

- For Interrogatory No. 1, we believe we are entitled to know the identities of any individual who provided factual information for the responses. **You think it's just Rod, but you'll let us know.**
- We believe we are entitled to a full response to Interrogatory No. 2 and 3, including where the leads came from, what system was used to make the calls and who was involved in their sending. **We're willing to limit this to just the Bills.com calls for now and any managers that are involved. You'll let us know the platform used.**
- With respect to Interrogatory No. 7, we believe production of all leads called with a pre-recorded message from SuperSamples.com is appropriate. **We are likely at impasse here, but you'll confirm.**
- For Interrogatory No. 9, communications with SuperSamples.com or their counsel are relevant. **You'll let us know.**
- A production for RPD No. 5 is relevant for willfulness and identified class members, especially because the Plaintiff alleges having made a stop request in this case. **We are likely at impasse here, but you'll confirm.**
- Your client has put consent at issue and as such we believe a complete response to RPD No. 11, which are communications about them, is appropriate. **You'll let us know.**
- I don't really understand the objection to RPD No. 15 that says you'd like to meet and confer but won't produce any documents. We believe that, minimally, the following documents should be produced (a) records of pre-records to SuperSamples leads (b) Records of pre-records sent after a DNC request was made. **We are likely at impasse here, but you'll confirm.**
- Also, we'd like to confer about your consent defense and the documents you intend to produce on that. As you likely recall, we had a class settlement with Health IQ related to the same website.
- Finally, can we please schedule an October deposition of Rod Halperin and Joseph Mascolo. I'm willing to take that via Zoom. **You'll let us know.**

- - -

Anthony Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
[o] (617) 485-0018

[c] (508) 221-1510
[f] (508) 318-8100

This email message may contain legally privileged and/or confidential information.  If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

On Thu, Aug 22, 2024 at 8:18 AM Anthony Paronich <anthony@paronichlaw.com> wrote:

Thanks, Brittany. Could we set up a meet and confer to discuss the below:

- For Interrogatory No. 1, we believe we are entitled to know the identities of any individual who provided factual information for the responses.
- We believe we are entitled to a full response to Interrogatory No. 2 and 3, including where the leads came from, what system was used to make the calls and who was involved in their sending.
- With respect to Interrogatory No. 7, we believe production of all leads called with a pre-recorded message from SuperSamples.com is appropriate.
- For Interrogatory No. 9, communications with SuperSamples.com or their counsel are relevant.
- A production for RPD No. 5 is relevant for willfulness and identified class members, especially because the Plaintiff alleges having made a stop request in this case.
- Your client has put consent at issue and as such we believe a complete response to RPD No. 11, which are communications about them, is appropriate.
- I don't really understand the objection to RPD No. 15 that says you'd like to meet and confer but won't produce any documents. We believe that, minimally, the following documents should be produced (a) records of pre-records to SuperSamples leads (b) Records of pre-records sent after a DNC request was made.
- Also, we'd like to confer about your consent defense and the documents you intend to produce on that. As you likely recall, we had a class settlement with Health IQ related to the same website.
- Finally, can we please schedule an October deposition of Rod Halperin and Joseph Mascolo. I'm willing to take that via Zoom.

- - -
Anthony Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400

Hingham, MA 02043
[o] (617) 485-0018

[c] (508) 221-1510

[f] (508) 318-8100

This email message may contain legally privileged and/or confidential information.  If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

---

**From:** Brittany Andres <brittany@troutmanamin.com>
**Sent:** Wednesday, August 21, 2024 5:02 PM
**To:** Anthony Paronich <anthony@paronichlaw.com>; Max Morgan <max.morgan@theweitzfirm.com>
**Cc:** Eric Troutman <troutman@troutmanamin.com>
**Subject:** RE: Hubble v. Loandepot.com, LLC

Hi Anthony

Please see attached loanDepot's responses to Plaintiff's first set of discovery.

Production to follow shortly.

**Brittany Andres ("The Baroness")**

*Partner*

400 Spectrum Center, Ste. 1550

Irvine, CA 92618

www.tcpaworld.com

www.cipaworld.com

www.troutmanamin.com

P: (949) 350-5612 (No ATDS)

F: (949) 203-8689



**From:** Anthony Paronich <anthony@paronichlaw.com>
**Sent:** Monday, July 22, 2024 2:56 PM
**To:** Brittany Andres <brittany@troutmanamin.com>; Max Morgan <max.morgan@theweitzfirm.com>
**Cc:** Eric Troutman <troutman@troutmanamin.com>
**Subject:** Hubble v. Loandepot.com, LLC

Hello, all. Our first set of discovery is attached.

- - -
Anthony Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400

Hingham, MA 02043
[o] (617) 485-0018

[c] (508) 221-1510
[f] (508) 318-8100

This email message may contain legally privileged and/or confidential information.  If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 18, 2024, I electronically sent the foregoing to counsel of record for the Plaintiff.


/s/ *Brittany A. Andres*
Brittany A. Andres