# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **ROBERT HUBBLE**, *on behalf of himself and all others similarly situated*, <br><br> *Plaintiff*, <br><br> v. <br><br> **LOANDEPOT.COM, LLC**, <br><br> *Defendant*. | Civil Case No.: 1:24-cv-11173 <br><br> Hon. Thomas L. Ludington |

### PLAINTIFF ROBERT HUBBLE'S REPLY BRIEF IN SUPPORT OF HIS MOTION FOR A PROTECTIVE ORDER

Plaintiff, Robert Hubble ("Mr. Hubble"), respectfully submits this Reply Brief in Support of his Motion for a Protective Order, and states as follows:

**I.  ARGUMENT IN REPLY**

Mr. Hubble is not "refusing to produce his telephone records," as Defendant falsely claims. [*See* dkt. 30 at 1]. Mr. Hubble *has already* produced the relevant telephone records [*see* dkt. 25-2] and has offered to produce additional information about certain telephone numbers appearing on his call logs (*e.g.*, numbers with commercial prefixes that appear on his telephone records). This should be sufficient to satisfy Defendant's professed need for the information while at the same time protecting Mr. Hubble's privacy. Defendant's rejection of such an offer and the arguments raised in its Opposition [dkt. 30] illustrate the need for a protective order.

1

### 1. Defendant has Demonstrated its Disregard for Plaintiff's Privacy and a Protective Order is Necessary

One of the main concerns Mr. Hubble raised with Defendant is *how* Defendant specifically intended to use the information if it was produced to Defendant in unredacted form. [*See* dkt. 25 at 7]. During meet and confers, Defendant failed to articulate *exactly* how it intended to identify *who* telephone numbers were associated with. Mr. Hubble suspects Defendant will call the numbers or subject Mr. Hubble to a deposition where Defendant will ask Mr. Hubble to identify the individuals associated with each and every number. This would subject Mr. Hubble, and countless other individuals appearing on his phone records, to unnecessary harassment.

Defendant now states, for the first time, that it will not call or disclose the numbers obtained from the records. [*See* dkt. 30 at 12, dkt. 30-1 at ¶ 7]. Defendant also claims that a protective order is sufficient to protect these records. But, Defendant has demonstrated indifference to the protective order and already violated its terms. For example, Mr. Hubble marked the records he produced to the defendant as CONFIDENTIAL. Mr. Hubble filed a redacted copy of the records as an exhibit to his motion for protective order, taking due care to redact his complete telephone number so that his personal identifying information would not be public. [*See* dkt. 25-1]. Mr. Hubble also explicitly noted he was doing so in a footnote in his Motion. [*See* dkt. 25 at 6, fn. 1]. Despite this, Defendant publicly filed the confidential copy

of the records, making Mr. Hubble's complete telephone number public. [*See* dkt. 30-1]. This alone demonstrates *why* a protective order is needed in this case.

2. **The Calling Records are not Relevant to Defendant's Consent Defense**

Defendant claims that the call logs it seeks are "essential for determining whether a defendant made the calls in question and whether the plaintiff gave prior consent." [Dkt. 30 at 6]. With respect to whether Defendant made the calls in question, *Defendant's* own records will have that information. *And*, Plaintiff produced redacted records showing the calls he received that he asserts originated with Defendant. On this front, Defendant already has the information it needs on this issue and Defendant does not dispute that it made the calls.

Defendant's consent argument is more absurd. A telemarketing defendant must have a "*signed, written agreement between the consumer and the seller which states that the consumer agrees to be contacted by this seller* and includes the telephone number to which the calls may be placed." Gaker v. Citizens Disability, LLC, 654 F. Supp. 3d 66, 71 (D. Mass. 2023) (quoting 47 C.F.R. § 64.1200(c)(2)(ii))(emphasis added). Vague, unspecific consent is insufficient; consent must be "clear and conspicuous." *See id.* However, despite this information clearly being the Defendant's burden, Defendant claims it subpoenaed Mr. Hubble's calling records to "prove Plaintiff provided consent—both to loanDepot and other companies—and was in the market for mortgage services during the relevant

3

timeframe." [Dkt. 30 at 1]. First, it remains unclear *how* these calling records would evidence prior express consent for loanDepot to call Plaintiff.  For instance, loanDepot does not claim that Mr. Hubble called them first to inquire about loanDepot's products or services. Rather, Defendant claims it obtained Mr. Hubble's telephone number and the requisite consent to call Mr. Hubble based on an alleged interaction with the obscure website, http://27.mysupersamples.com/[1], that has absolutely nothing to do with mortgages.  loanDepot's consent defense has nothing to do with the telephone records.

Whether or not *other* companies had proper consent to call Plaintiff does not mean that **loanDepot** had proper consent to call Plaintiff. Further, if another mortgage company called Plaintiff, that does not necessarily mean that Plaintiff requested the call, consented to the call, or was in the market for a mortgage product at the time he received the call. Defendant can simply ask Plaintiff, at a deposition or through an interrogatory, if Plaintiff was in the market for a mortgage product when he received the calls from loanDepot. This should be more than sufficient to satisfy Defendant's needs and is far less intrusive with respect to his privacy rights

---

[1] A review of this website reveals that it has nothing to do with mortgages or refinancing a mortgage whatsoever.  Rather, it asks a consumer if they are interested in "samples" and "savings" and depicts consumer products like Tide® pods and razors. *See* https://27.mysupersamples.com (last accessed Nov. 20, 2024).  Further, a review of the "marketing partners" hyperlink does even include any reference to the defendant.  *See* https://27.mysupersamples.com/marketing-partners/ (last accessed Nov. 20, 2024).

4

and those of third parties. The Court should not allow Defendant to rifle through Mr. Hubble's call logs to fish for a consent defense.

Defendant's comment about the relevancy of calls from other "marketing partners" that are featured on the alleged website fares no better. [*See* dkt. 30 at 6-7]. This is especially so when the site in question includes a hyperlink that lists *hundreds* of "marketing partners." Defendant has not even shown that it was *actually* listed on the site at the time of the alleged consent.

    3.    **The Majority of Cases loanDepot Relies Upon Miss the Mark**

The majority of the cases loanDepot relies upon turned on other issues and specific facts that loanDepot fails to disclose. For example, in *Lucas*, the defendant denied placing the calls at issue, and the defendants subpoenaed the calling records of one of the other defendants to determine who placed the calls. *See Lucas v. Telemarketer Calling from (407) 476-5670*, No. 1:23-cv-630, 2014 U.S. Dist. LEXIS 200847, at *4-7 (S.D. Ohio May 22, 2014). This case is not relevant because the plaintiff's records were not even at issue and the same concerns are not present. Further, there is not a dispute here that loanDepot placed the calls.

In *Perrong*, the purported need for the records was in furtherance of Defendant's counterclaims for abuse of process and fraud. *See Perrong v. Golden Rule Ins. Co.*, No. 1:19-cv-01940, 2020 U.S. Dist. LEXIS 266807, at *6-8 (S.D. Ind.

Mar. 17, 2020). Here, loanDepot does not raise any similar claims, arguments or needs and would have no good faith basis to do so. Again, this case is inapplicable.

In *Molnar*, the Court stated that it "agree[d] that in this TCPA case calls to and from uninvolved parties such as doctors, lawyers, family or friends would be irrelevant" but required the production of call records because "plaintiffs' counsel indicated that plaintiffs may seek to hold defendant liable for calls made to plaintiffs that do not appear on plaintiffs' telephone records." *Molnar v. NCO Fin. Sys.*, No. 13cv131-BAS (JLB), 2014 U.S. Dist. LEXIS 93548, at *11-12 (S.D. Cal. July 8, 2014). Again, the facts of this case and the others relied on by Defendant turned on very specific circumstances that are not present here.

In *Katz,* there was a question of whether Mr. Katz's purported residential number fell within the provisions of the TCPA. *See Katz v. Liberty Power Corp., LLC*, No. 18-cv-10506-ADB, 2019 U.S. Dist. LEXIS 30901, at *10-11 (D. Mass. Feb. 27, 2019). Given those specific factual circumstances, the Court required the records be produced. *See id.* at *11 ("Here, given the uncertainty as to how some of the Plaintiffs' phone numbers were being used, the subpoenaed account records are potentially relevant . . . .") But, in doing so, the Court still put significant restrictions on the defendant's use of those records:

> Defendants shall treat the records produced in response as "Confidential" under the Protective Order, [ECF No. 20], and shall not inquire at any deposition as to the content of calls that Plaintiffs concede do not concern Defendants,

6

> their agents, or TCPA claims. Defendants may inquire whether calls are of a business or personal nature but may not go beyond that for calls that do not relate to TCPA violations alleged here or elsewhere.

*Id.* at *12-13.

At bottom, Defendant has no legitimate need for the records and is attempting to embark on nothing more than a fishing expedition or harassment campaign. The Court should accordingly grant Mr. Hubble's motion.

As requested previously, Mr. Hubble respectfully requests the Court: (1) grant his Motion; (2) enter an order pursuant to Federal Rules of Civil Procedure 26(c) protecting Mr. Hubble's private information in the possession of Verizon; (3) quash the subpoena to produce documents issued by Defendant to Verizon, or in the alternative, modify and limit the subpoena to documents generated for the specific dates at issue and the numbers Defendant called Mr. Hubble on; and (4) grant such other and further relief as this Court deems necessary and proper.

PLAINTIFF,
By his attorney

*s/ Max S. Morgan*
Max S. Morgan, Esquire
THE WEITZ FIRM, LLC
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com

Anthony I. Paronich

7

Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

George T. Blackmore (P76942)
BLACKMORE LAW PLC
1100 Owendale Drive, Suite M
Troy, MI 48083
T: (833) 343-6743
F: (855) 744-4419
E: george@blackmore.law

*Attorneys for Plaintiff*

8

## **CERTIFICATE OF SERVICE**

The foregoing document has been filed electronically, is available for viewing and downloading from the ECF system, and has been served on all parties of record via electronic service through the ECF system on November 21, 2024.

/s/Max S. Morgan  
Max S. Morgan
